## J. D. HATCHER ET UX. V. CONTINENTAL SOUTHLAND SAVINGS & LOAN ASSOCIATION.

No. 6683.   Decided March 27, 1935.
Rehearing overruled May 15, 1935.
(80 S. W., 2d Series, 299.)

*B. H. Oxford,* of Mission, *Oxford. & Oxford,* and *Royce A. Oxford,* all of Plainview, for appellants.

Where a contract provides for the payment of 10 per cent interest on the amount loaned, and the borrower paid a commission in addition thereto to the agent of the lender, the contract is usurious. Wood v. Continental B. & L. Assn., 56 S. W. (2d) 641 (Com. App.); Farm & Home Savings & L. Assn. v. Muhl, 37 S. W. (2d) 316; Fowler v. Equitable Tr. Co., 141 U. S., 384, 35 L. Ed., 786.

*W. H. ·Flippen,· Dan P. Johnston* and *J. Manuel Hoppenstein,* all of Dallas, for appellee.

Where the allegations in plaintiffs' petition, together with the provisions contained in the exhibits attached thereto, disclose that contract is not for more than ten per cent per annum to be collected in any one year, such allegations are insufficient to entitle plaintiffs to recover the statutory penalty for usurious interest. Simpson v. Grissom, 38 S. W. (2d) 1106; Gunter v. Merchant, 213 S. W., 604.

*M. W. Terrell,* of San Antonio, filed brief as amicus curiae.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals.

This case is before the Supreme Court on certified questions from the Court of Civil Appeals for the 7th district at Amarillo, Texas. The certificate is as follows:

"The appellants Hatcher and wife borrowed $4,500.00 in July, 1926, from the appellee Loan Association, executing their note for said sum, secured by a deed of trust upon certain property in the City of Plainview. At the same time they applied for 68 shares of stock in the Association, a certificate being issued to them and as a part of the transaction for the purpose of securing the payment of the note, they assigned as collateral the shares of stock. The note is made payable when the 68 shares of stock shall reach a value equivalent to the face of the loan for which the note is given.

"Hatcher and wife as plaintiffs filed their amended original petition, upon which the case was tried, on May 31, 1933, praying for a cancellation of the deed of trust upon their property, for judgment for double the amount of interest they had paid to the Association within the preceding two years, amounting to $1,000.00, and for all other legal and equitable relief to which they may be entitled.

"The Court sustained a general demurrer to the amended original petition and upon the refusal of plaintiffs to amend, the cause was dismissed, judgment was excepted to and notice of appeal given and the case is before this Court for review.

"Because a general demurrer was sustained, we deem it advisable to set out substantially the allegations of plaintiffs' amended petition, which are as follows:

" 'That the defendant is a Building & Loan Association, organized for the purpose of loaning money * * * and long prior to the making of the loan hereinafter set out, the defendant devised the idea of making loans at a usurious rate of interest and devised a plan whereby they attempted to evade the usury laws of the State of Texas. They entered into a scheme and devised a subterfuge in the way of stock subscriptions, in order to evade or in an attempt to evade the usury laws of the State of Texas, the said plan and scheme being as follows:

" 'That when a party made application for a loan to said defendant, the party making said application would be required to subscribe for some purported stock in defendant's

association in an amount equal to the amount of the loan which was to be made to the parties applying for said loan. That a loan would then be made upon the property in question, a note signed for the money loaned, which would not be due at any particular time, but which would be due at a time when the shares of stock became of equal value to the amount of the loan. That said note provided for the payment of interest at the rate of ten per cent per annum from the date it was signed until the maturity thereof.

" 'The party applying for the loan was then required to pay the loan back in monthly installments, which monthly installments were divided into interest and stock payments; at each month the borrower was required to pay 10% interest on the original loan for one month, and the balance of said monthly payment was applied to the stock which he had contracted to purchase from defendant association. The monthly payments in each case were considerably in excess of the amount required to pay the ten per cent interest and the excess of the monthly payment, instead of being applied to the principal which had been borrowed, was applied as a payment on the stock subscription of the borrower and by so applying excess payments made by the borrower the defendant association conceived the idea that this would not reduce the principal and they could collect and did collect from its borrowers an interest payment equal to ten per cent per annum each month on the entire sum loaned, and the principal was never reduced at any time. * * *

" 'That said scheme was a scheme whereby the defendants could collect ten per cent interest on the full amount loaned for the full term that the loan run without any reduction in principal whatever and that such scheme was fraudulent and made for the sole and only purpose of evading the usury laws of this State. * * *

" 'That the device set out herein and said fraudulent scheme for the purpose of evading the usury laws and said fraudulent scheme of stock subscription was arranged in order for the defendants to collect more than ten per cent interest per annum, and was conceived and formed for the purpose of enabling them to collect ten per cent interest on all the money they paid out, or loaned, and then they had it within their power to pay the purported stockholders only such dividends as they saw fit. The purported stockholders had no voice in the management of the affairs of the Company and had no voice in saying when a dividend should be declared and to whom it

should be paid, and that if any dividends were declared by the defendants by any of its stockholders such dividends were merely for the purpose of covering up their fraudulent scheme to collect usury.

" 'That in pursuance to said plans and schemes as above alleged and in order to evade the usury laws, the defendant, on or about July 19, 1926, loaned to plaintiffs the sum of $4,500.00 and the plaintiffs executed to defendant their promissory note in such sum, which note was due and payable as and when the stock subscribed by plaintiffs may become of equal value to the amount borrowed, a copy of which note is attached hereto, made a part hereof and marked Exhibit A. * * *

" 'That the defendant now claims that the plaintiffs subscribed for $4,500.00 in stock in said Company, but the plaintiffs show to the Court that if they did subscribe for any stock in defendant's corporation they did not know it at the time they made the loan, and that if they did subscribe for $4,500.00 worth of stock in said Company it was taken out or subscribed for at the time the loan was made to them, and was all one and the same transaction and that said scheme was a subterfuge devised by the defendant for the purpose of evading the usury law. That in said contract for the loan, as above alleged, the plaintiffs agreed to pay monthly the sum of $71.35, and that after said loan was made the defendant furnished to plaintiffs what they call a "Pass Book" and each time that plaintiffs made a payment to the defendant said pass book is delivered to the agent of defendant who marked in said book the amount of money received by the defendant through its agent and the date it is received and the name of the agent receiving same. That semi-annually the plaintiffs have said book posted by the defendant as to the value of the shares that plaintiffs have subscribed for, and at each six months the defendant has posted said book and given plaintiffs credit for certain amounts paid by them on their loan. That instead of crediting a portion of the $71.35 to the reduction of the principal, said amounts are credited by defendants upon the stock subscribed for by them, and the defendant claims at this time that the plaintiffs have paid nothing on their said loan and claims that all the payments made by plaintiffs to defendant have been credited to interest on said $4,500.00 and the balance or excess over 10% interest has been credited as a payment on the shares of stock, which defendant claims plaintiffs subscribed for. * * *

" 'That said Company, by and through its agents, repre-

sented to plaintiffs that the payments so made would be applied to the retirement of the loan and made no representations about any stock whatever and also represented that the monthly payments heretofore mentioned would be applied on the loan and retire it at the end of ninety-six months, all of which representations were untrue and the defendants, at the time they had their agents make such representations, knew said statements were untrue. That these plaintiffs had great confidence in the agents of the defendants and relied on said representations so made by the defendants, through their agents, and did not investigate said loan and did not read the papers they signed, but merely signed all instruments which the defendants and their agents told them to sign, which false representations were made for the purpose of deceiving these plaintiffs. * * *

" 'That said stock a copy of which is attached hereto and marked Exhibit "B" is wholly worthless and bears no revenue for the plaintiffs, and that said plan and scheme was only a plan and scheme and subterfuge for the purpose of covering up and hiding the defendant's unlawful purpose and unlawful intent and unlawful acts in receiving and collecting usury. That in truth and in fact a portion of the payments made by plaintiffs each month to defendant should be credited to the principal of their loan and the principal reduced each month, and the interest payments reduced each month in accordance therewith, but that defendant has not reduced the interest payments but *that plaintiffs have been paying and the defendant has been applying through all the years an amount equal to 10% per annum on the full $4,500.00.* * * *

"That they verily believe and here allege that no stock was ever issued to them and that no stock was ever delivered to them, and that if they signed any transfer or assignment of said stock they did not know it, and plaintiff here demands that if said stock was ever issued that the original stock be produced in court in order that these plaintiffs may examine same, a copy of application for said stock being attached hereto and marked Exhibit "C", and a copy of the pledge of said stock being attached and marked Exhibit "D."

" 'If, however, any stock was ever sold by the defendant to the plaintiffs, or if any stock was ever subscribed for by the plaintiffs in defendant corporation, said stock was not paid for at the time of its issuance, and violated the Constitution of the State of Texas, and said stock subscription or stock sale was illegal and void because in violation of the Constitution, a copy

of the purported application for loan being attached hereto and marked "Exhibit C." * * *

" 'That the payment of $71.35 made by them each month is far in excess of 10% per annum, on the $4,500.00, and that the excess of said 10% should have been applied by defendant to the reduction of the principal. * * *

" 'That one of the rules and regulations of the defendant Company is evidenced by a statement made in their said pass book as follows: "If not paid on or before the 15th day of each month a fine of one per cent per month on each dollar in arrears will be charged and collected," which was a part of the by-laws of the Company. * *· *

" 'That one per cent per month is 12% per annum, which is more than the legal and statutory amount of interest allowed by law, and that while said amount is called by the defendant Company a fine, it is, in reality, interest which they receive and collect, thereby rendering their contract for interest usurious and void. * * *

" 'That the deed of trust which they executed to the defendant, a copy of which is attached hereto, made a part hereof, and marked Exhibit "F" provided that in the event the plaintiffs became delinquent on the taxes on the lands hereinafter described, that the defendant could pay said taxes and it would become a part of the debt owed by plaintiffs to defendant, and that plaintiffs should pay to the defendant said taxes and interest thereon at the rate of one per cent per month, which stipulation taken in connection with the other contract for 10% on amount of money loaned, amounted to more than 10% for the detention of .money, and which provision made said contract usurious and void.

" 'Plaintiffs would further show to the Court that when said book was posted by defendant Company, and after eleven payments of $71.35 had been made, the defendant Company represented, as shown by said pass book, that the total value of the shares on June 15, 1927, was $173.52; plaintiffs would show to the Court that the balance of said eleven payments was applied by defendant Company to interest, except the agreed commission. * * *

" 'That plaintiffs paid monthly, beginning Aug. 9, 1926, the sum of $71.35 each and every month, up to and including April 15, 1931; that beginning May 15, 1931, plaintiffs have paid to defendant Company $50.00 each month, up to and including Aug. 15, 1932; that they have paid a total to defendant of $4866.95. * * *

" 'That if the payments made by them had been applied

each month to the payment of an amount of interest equal to 10% per annum for one month, and the balance applied to the principal as should and would have been done if it were not for said fraudulent scheme of the defendants that the principal, each month, would have been reduced and the interest payments reduced each month, and plaintiffs' loan would have been decreased much more rapidly than has been done, and the credits on the principal would have been much greater than the credits and defendant now applies as payment on stock; * * * that during the first eleven months of the loan, the plaintiffs paid a total of $784.85; that interest on the $4500.00 loaned for 11 months at 10% is $412.50. That deducting the $412.50 as interest, at the rate of 10% per annum, for the first 11 months, there would have been a balance, to be applied, of $372.35, which should have been applied on the principal or at least that amount should have been applied as a payment on stock. But, instead of allowing the plaintiffs said excess in the sum of $372.35, they credited plaintiffs' stock with the sum of $173.52, and charged these plaintiffs as interest the sum of $611.33, which was much in excess of 10% per annum for the first eleven months of the loan and that said charges were made in pursuance of the aforesaid plan and scheme of the defendant to cover up its usurious transaction. * * *

" 'That at the time of the making of said loan the defendant had working for them as their agents in Hale County, a partnership composed of J. P. Flake and Barney Rushing, operating under the name of Flake & Rushing, who made loans for them in Hale County, who had a contract of agency with the defendants. That at the time of the signing of the contract involved in this case the plaintiffs and the defendants had an agreement made and entered into with the defendant through their agents, that the plaintiffs would pay to the defendant a commission equal to the first six monthly payments less the interest for that time, one-half of which would be retained by the defendants themselves and one-half of which would be paid to the agents Flake and Rushing for making the loan. That there was a verbal agreement that the monthly payments would be the sum of $71.35. That there was an agreement to charge two and one-fourth per cent as a commission to Flake and Rushing, and a like amount was to go to the defendants, as commission. * * *

" 'That the said Flake and Rushing made a charge of two and one-fourth per cent on the amount of the loan, which charges were made as agents of the defendants in making said loan, and which was paid by plaintiffs, all of which was done

at the special instance and request of the defendants, and with their knowledge and consent. That said charge, though denominated brokerage fees, was in reality money paid by the plaintiffs to the defendants for the use, forbearance and detention of money, and which fees were in excess of the ten per cent per annum stipulated for in said deed of trust and note, which was more than ten per cent per annum, and rendered the contract void and of no effect as to interest and usurious. * * *

" 'That said contract above alleged was usurious and void in so far as any interest payment was concerned, and the contract for the payment of interest was void and of no effect, and that all payments that plaintiffs made to the defendant more than two years ago should be applied as payment upon the principal and that all moneys that have been applied as interest on said loan which has been paid by plaintiffs to defendant within the last two years are subject to statutory penalties in the amount of double the interest that was paid within the last two years which plaintiffs say was approximately $1000.00. * * *

" 'That in order to secure said $4500.00 loan above alleged they executed to the defendant a deed of trust upon the following property, to-wit:

" 'Lot 11, Block 29, City of Plainview, in Hale County, Texas, and that said note having been fully paid off, said lien now constitutes a cloud upon plaintiffs' title, which should be removed therefrom. * * *

" 'That the name of the defendant at the time of the making of this loan was the Continental Savings & Building Association a corporation, of Dallas, Dallas County, Texas, and that since the making of said loan and prior to the filing of this suit, the name of said Company has been changed to the Continental Southland Savings & Loan Association. * * *

" 'That in addition to the verbal contract to pay a commission as hereinbefore alleged, the parties hereto had a written contract which was in the form of an application for a loan, signed by the plaintiff herein, which written contract provided for the payment of certain membership fees, and for certain loan brokerage fees, which was sometimes termed "Loan fees," but, regardless of the term or name given to the sum so charged, it was a charge made for the use, forbearance or detention of money, and, under the law in this State, was interest, which charge taken in connection with the 10% called for in the face of the loan, rendered the contract usurious and void. And defendants are hereby notified to produce said original application at the trial of this case, else secondary evidence of its contents will be offered.'

"Attached to the amended petition were the following exhibits:

"(1). A promissory note, dated July 5, 1926, in the sum of $4500.00, payable 'at and when the 68 shares of the capital stock, Class A installment of Continental Savings & Building Association * * * shall reach a value equivalent to the face of the loan for which this note is given, we promise to pay,' etc., which provides for interest at the rate of ten per cent per annum, payable in equal monthly installments and for the payment of interest on past due interest at the rate of ten per cent. The note also contains an acceleration clause and a provision for ten per cent attorneys fees.

"(2). An application for membership signed by the plaintiffs, which recites that they apply for 68 shares of Class A installment stock and agree to accept it subject to the by-laws of the Association. The maturity value of the stock is stated as $6800.00, with monthly payment of dues in the sum of $34.00 and the payment of a membership fee of $162.00 and further recites 'we understand that an agent is authorized to collect only the first payment from an applicant for membership in the Association.'

"(3). An assignment by plaintiffs as collateral security to the above described note of the said 68 shares of stock 'with special agreement that if default shall be made in the payment of the principal of said note or any installment of interest thereon when due or in payment of any dues or fines upon said shares when due' etc., the Association is authorized to sell the shares and apply the proceeds as recited in the assignment. It is further stipulated therein that no payment upon said stock shall be applied as a payment upon the loan evidenced by said note except after sale as collateral as herein provided or except said shares shall be voluntarily so applied by the owner thereof upon maturity or withdrawal of the same.

"(4). The written application made by plaintiffs for the loan, dated July 5, 1926, recites that they apply for a loan of $4500.00 and subscribe for the 68 shares of stock above described, agreeing to accept both subject to the by-laws of the Association. As pertinent to the contentions herein considered, the application recites: 'We agree to repay said loan in payments of $71.35 on the 5th day of each month which we understand is a monthly payment of dues on the stock subscribed for and interest on the loan for which application is made.'

"(5). A deed of trust executed by plaintiffs to R. A. Beaton, as trustee, conveying Lot 11 in Block 29 in the City of Plain-

view, with the usual covenants and agreements of such an instrument, including an agreement to keep the buildings and improvements insured and all taxes paid, with the additional special agreement as follows:

" 'It is especially agreed that if the grantors shall fail to effect such insurance and deliver such policies as herein provided or shall allow taxes upon said real estate to remain unpaid for a period of one month after they become delinquent, the legal holder of said note may effect said insurance or pay said taxes and charge the amount to the account of the grantors, together with a fine of one per cent per month upon the amount of such taxes paid, until said fine is paid and sums reimbursed and the sums so expended for insurance or taxes as well as the amount of said fine, shall become a part of the debt hereby secured.'

"(6). A certificate of stock, dated Feb. 15, 1927, certifying that the plaintiffs are the owners of 68 shares and stipulating that each share enfitles the holder thereof to its proportion of the fines of the Association, subject to the provisions of the by-laws and the pass book.

"The appellants contend that the petition, with its exhibits, sets out a contract usurious upon its face and alleges facts showing that the debt had been paid in full. That because it is alleged that the plaintiffs paid a commission of five per cent to the agents of the Association, one-half of which was retained by the Association, and the other one-half by the agents, and further alleged that plaintiffs paid ten per cent per annum interest, the contract is usurious. That it is further usurious because it provides for the payment of ten per cent interest on the money loaned and further provides for twelve per cent interest on money thereafter advanced by the lender to pay insurance and taxes, if such payments should be made. That where a building and loan association forces the borrower to buy its stock as a cloak to cover up usury, the Court will look at the real transaction and if the contract was entered into for the purpose of evading the usury laws, it is usurious.

"The Constitution, Art. 16, Sec. 11, provides that all contracts for a greater rate of interest than 10% per annum shall be deemed usurious and further provides that the Legislature shall provide appropriate pains and penalties to prevent the same. In obedience to the mandate of the Constitution, the Legislature by enactment and amendment of Revised Statutes Title 79, Arts. 5069 to 5074, among other provisions declared that within two years after the time that a greater rate of interest than 10% shall have been received or collected upon any

contract, the person paying the same, or his legal representative, may, by an action of debt, recover double the amount of such interest from the person, firm or corporation receiving same. (Art. 5073).

"The opinion of a majority of this Court is that in filing this suit under the provisions of the statute just quoted, the plaintiffs are endeavoring to recover solely and alone under said article. That when properly construed and every reasonable intendment indulged in favor of its sufficiency as against the general demurrer, the petition does not purport to have been filed by members of a building and loan association organized under R. S. Title 24. There is no allegation that they are members of any building and loan association, nor is there an allegation that the defendant in the action is a corporation organized under the laws of the State of Texas as a building and loan association or any other allegation tantamount thereto. To a majority of the Court, the petition upon its face is brought without reference to the building and loan statutes and is simply an action by a borrower from a loan association who has paid usurious interest and is seeking to recover double the amount so paid. It is true that the petition alleged that their contract provided that they should make payments upon shares of stock, but they further allege that they verily believe no shares of stock were ever issued to them and that no stock was ever delivered to them. The defendant is nowhere designated in the pleading as a corporation and since stock may be issued by a partnership or by those interested in any other character of a joint adventure without having been incorporated under the laws of the state, there is nothing in the pleading to indicate that the plaintiffs' cause of action is in any way governed by the building and loan statutes. Arts. 852 to 881 inclusive, 1925. It appears that the contract binds the plaintiff to. pay interest at the rate of ten per cent per annum upon the $4500.00 borrowed. The additional charges alleged to have been paid by plaintiffs in the way of dues, fines and stock payments, it is conceded renders the contract usurious unless such charges may be justified under the provisions of said Title 24. Art. 852 of said title provides that any number of persons not less than five residing in the state who desire to organize a building and loan association *may* by complying with the provisions of this title and *entering into articles of association,* become a corporate body. There is no allegation in the plaintiffs' petition from which the Trial Court could assume that any number of persons had complied with this statutory provision. Title 24 does not prohibit the existence of a building and loan

association unincorporated, nor does it apply to any such association which may lend its capital for building purposes. Other articles of Title 24 provided that an association organized under its provisions shall adopt by-laws for the regulation and management of its business, but plaintiffs' petition contains no allegations that any such by-laws have been adopted in obedience to the statutory requirement, nor is it alleged that any by-laws authorizing the collection of the various sums which plaintiffs have paid in excess of ten per cent has ever been enacted by the defendant. The same is true with reference to installment payments on stocks, called dues, with the payment of premiums, fines or any other charges which plaintiffs allege have been made against them and paid to the defendant. It is further charged throughout the petition that the defendant's agents who negotiated the loan for plaintiff charged them a commission, one-half of which was paid to the Association; that even if this was a brokerage fee or a premium, the loan would be usurious under the Constitution and it was in fact a device and a subterfuge under which the Association was enabled to collect more than 10% interest. They alleged that the stock subscription scheme was a fraud and a subterfuge; that no stock was issued to them, that they were never really stockholders in any association, were not permitted to participate in the meetings held by other stockholders, if any, and that the defendant's purpose was to collect usurious interest which they denominated payments on stock.

"The plaintiffs further attack the provisions of the contract which authorizes the Association to charge 12% on past due payments. They further attack the provisions in the deed of trust which requires the plaintiffs to keep the property insured and pay the taxes and the further provision that if these amounts become delinquent, the Association may pay such taxes and insurance, charge the amount to the plaintiffs, with a fine of 1% per month upon the amount of taxes paid, and that the sums so expended by defendant, as well as the amount of the fine, shall become a part of the principal debt.

"It must be conceded that the contract, when considered as one between an ordinary lender and borrower, is usurious and that the petition charges fraud and violation of the Constitution and statutes relating to usury with reference to each item paid by them.

"Because the members of this Court are unable to agree and for the further reason that a decision of the issues involved requires a construction by the Court of the Constitutional provision, together with the statutory enactments relating to usury

and building and loan associations, we respectfully certify to Your Honors the following questions:

"1. Does the plaintiffs' petition state a cause of action which is within the statutes relating to building and loan associations (R. S. Title 24, Arts. 852, et seq.)?

"If Your Honors, in reply to the first question, answer that the allegations of the petition show a cause of action within the said building and loan statutes, then we respectfully request you to answer the following question:

"2. Bearing in mind that the principal note provides for interest at the rate of ten per cent per annum, is the allegation (Transcript pages 8-9) charging that the defendant had an agreement with their agents, Flake & Rushing, whereby they were enabled to collect and did collect and received one-half of the commissions which said agents collected from plaintiffs, sufficient to show usury?

"3. Bearing in mind that the principal note provides for interest at the rate of ten per cent per annum, is the allegation in the petition (Transcript page 7) with reference to the provision in the deed of trust relating to insurance and taxes, and that if said amounts became delinquent the defendant association could pay the taxes and insurance which would become a part of the debt and upon which amount plaintiffs were to pay at the rate of one per cent per month, sufficient to show usury?

"4. Bearing in mind that the principal note provides for interest at the rate of ten per cent per annum, is the allegation with reference to the rule of the Association as contained in the Pass Book, that if payments of interest and on stock were 'not paid on or before the 15th day of each month, a fine of one per cent per month on each dollar in arrears will be charged and collected,' sufficient to show usury?"

OPINION.

It will be noted that the certificate states, in effect, that a majority of the Court of Civil Appeals is of the opinion that plaintiffs' petition in the district court is an attempt to recover for usury solely under the provisions of Article 5073, R. C. S., 1925, and related statutes; that such petition does not purport to have been filed by members of a building and loan association organized under R. S. Title 24; that there is no allegation that plaintiffs are members of any such association; that there is no allegation that this association is a corporation, organized under the laws of Texas as a building and loan association, or any other allegation tantamount thereto; that the suit is

brought without reference to building and loan statutes, and is simply an action by a borrower from a loan association to whom such borrower alleges he has paid usurious interest, and is seeking to recover double the amount paid; that so far as shown by the petition no stock was ever issued or delivered to plaintiffs, and that the defendant is nowhere designated in the pleading as a corporation, and since stock may be issued by a partnership or by those interested in any other character of a joint adventure without having been incorporated under the laws of the State, there is nothing in the pleading to indicate that the plaintiffs' cause of action is governed by our building and loan statutes.

■ In our opinion the above conclusions relating to plaintiffs' petition in the district court are not justified. To our minds the petition, with exhibits attached, clearly discloses a suit for usury against a building and loan association, duly chartered under pertinent laws of this State, by a borrowing member thereof. The petition alleges "That the defendant is a building and loan association," etc. It also alleges "That the name of the defendant at the time of the making of this loan was the Continental Savings & Building Association, a corporation, of Dallas, Dallas County, Texas, and that since the making of said loan and prior to the filing of this suit, the name of said company has been changed to Continental Southland Savings & Loan Association." Also the petition has attached thereto as parts thereof, the exhibits mentioned in the certificate of the Court of Civil Appeals. Exhibit A is a copy of the stock certificate issued by this association to the plaintiffs. This certificate is for 68 shares of Class A installment stock of the defendant association. It shows on the face thereof that the defendant association is incorporated under the laws of the State of Texas, and that the stock is for $100.00 per share. Exhibit F is a copy of the deed of trust given by the plaintiffs to this association to secure this loan. This instrument recites that the association is "of Dallas, Texas, a corporation." We think that the above allegations and attached exhibits clearly demonstrate that the petition in effect alleges that this defendant is a building and loan association organized under the building and loan statutes of this State.

■ A further examination of the petition and attached exhibits demonstrates that it, in effect, alleges that Hatcher and wife are borrowing members of this association and are suing for usury for alleged usurious interest collected by the association from them as such borrowing members. This is evident because the

several exhibits, considered in the light of the direct averments of the petition, in law constitute Hatcher and wife borrowing members of a building and loan association organized under the laws of this State, and constitute the contract, as made, one duly authorized by such laws. Wood v. Continental Savings & Building Association (Com. App.), 56 S. W. (2d) 41, and authorities there cited. In this connection we think the contract here pleaded as usurious is in legal effect the same as the contract considered by Judge Short, speaking for Section B of the Commission, in the Wood case, supra. The contract in the Wood case was held free from usury. It follows that the same construction should be given to this contract.

In connection with the above it is true that the petition makes certain sweeping allegations of fraud and subterfuge, but when the petition is considered as a whole and in the light of the attached exhibits it is clear that it pleads a contract in conformity with our building and loan association laws. The allegations of fraud and subterfuge are pure conclusions of the pleader and are based on the theory that the contract as made was illegal. The contract is not illegal. It follows that the petition alleges no facts that would constitute the contract a fraud or a subterfuge.

This opinion is ordered certified as an answer to the certified questions propounded to this Court by the Court of Civil Appeals.

Opinion adopted by the Supreme Court March 27, 1935.