SECURITY THRIFT SYNDICATE v. TIDWELL et al.

No. 30310.   March 24, 1942.

*123 P. 2d 955.*

Peterson & Peterson, of Cheyenne, E. A. Simpson, of Amarillo, Tex., and H. C. Ivester, of Sayre, for plaintiff in error.

F. R. Blosser, of Cheyenne, for defendants in error.

RILEY, J. This action was commenced in the district court of Roger Mills county, by plaintiff in error, herein referred to as plaintiff, against C. M. Tidwell and Bernice Tidwell, to recover judgment on a bond or note, and to foreclose a mortgage given to secure same. Federal Deposit Insurance Corporation, a second mortgagee, was made a party, but since that defendant's interest is not involved in the appeal, the Tidwells will be referred to herein as defendants.

The execution of the bond or note sued upon is admitted. The note is for $1,000 with interest at the rate of 9 per cent, payable $7.50 per month. Defendants pleaded usury.

In order to secure the loan of $1,000, defendant C. M. Tidwell signed an application therefor which in part provided:

"I, the undersigned, hereby apply for a loan of One Thousand Dollars ($1,-000.00) and make application for 10 Class 'C' Installment Bonds of the Security Thrift Bond Syndicate.

"This loan is to be repaid by me in 120 monthly installments of Thirteen and 90/100 ($13.90) Dollars each, which monthly installments together with any other sums paid at any time may be applied as follows:

"1st. To the re-payment of taxes, insurance premiums and other advances made by the Syndicate in protection of the loan.

"2nd. To the payment of interest due on the loan and fines or interest charged upon delinquent installments.

"3rd. To dues upon the Class 'C' Installment Bonds which are to be carried by me to maturity to repay the principal of the loan."

These "thrift" bonds were required to be assigned to the syndicate as addi-

tional or collateral security for the note. The "thrift" bonds provided:

"At maturity of these bonds they shall be cancelled and release of the loan be given, if interest and all other charges on the real estate loan are paid and all other conditions of the loan contract are complied with."

The bond given as evidence of the principal indebtedness provided for payment by the maker of $13.90 monthly, to be applied, $7.50 as interest on the loan and $6.40 as dues upon the "thrift" bonds until the loan was paid in full, and when one hundred and twenty (120) of said monthly installments have been made, and all other conditions complied with, said bonds shall be surrendered to the syndicate and the syndicate shall cancel same, and release the loan.

The mortgage also provides that payments on the interest were to be made monthly and the principal was to be paid in one sum "by the surrender of ten Class 'C' installment bonds," purchased in monthly installments of $6.40, making a total monthly payment of $13.90, and also provided that when said class "C" installment bonds were matured, that is, when 120 monthly installments of $6.40 each had been paid, they should be surrendered to the syndicate for cancellation.

Defendants contend that the scheme or plan devised and used by plaintiff was but a subterfuge to hide usury; that the rate of interest under the plan was about 14 per cent; that they had paid 24 monthly installments of $13.90 each (which is admitted), amounting to $333.60, which, added to twice the amount of interest contracted for, was sufficient to discharge the indebtedness.

The trial court found, and it is not disputed, that "it admitted the contract sued upon was usurious, if the loan and Thrift Bonds purchased be considered as but a single transaction." The court held that it was all one transaction and therefore usurious; that the $333.60 paid, together with double the amount of interest charged, amounted to $1,669, a sum sufficient to offset and discharge plaintiff's claim.

Judgment was entered for defendants, and plaintiff appeals.

The first proposition presented is that the court erred in holding that the application for the loan and for the class "C" installment bonds, the note and mortgage constituted one transaction.

In support of its contention, plaintiff cites Hickman v. Oklahoma Savings & Loan Association, 169 Okla. 224, 36 P. 2d 928, and a number of other building and loan association cases where claims of usury were made.

The Hickman Case, supra, holds:

"Where a party enters into a contract to purchase stock and to borrow money from a building and loan association, the two transactions have no connection with each other and cannot be commingled to support an action for usury."

Plaintiff is not a building and loan company and is not entitled to operate as such. It has devised a rather clumsy imitation of building and loan methods. But its contracts are entirely different.

In building and loan transactions, the borrower does agree to purchase stock, and his payments are deemed to have been made as payments for the stock. When the stock matures, the purchaser has the option to pay his loan and note for his loan in full, without regard to what he has paid for the stock, to have his note returned and his mortgage released, and keep the stock as an investment. During all the time he is paying for the stock he is entitled to the benefits of its earnings. Not so with the "thrift" bonds which plaintiff pretended to sell. They are never sold to the public as investments; they draw no interest until they mature. Then the borrower has no option to keep them as an investment; they must be used in payment of the principal indebtedness. The application for the loan so states; the note or bond, which he executes as evidence of the indebtedness, so states; the mortgage given to secure the loan so states, and the certificate issued by plaintiff evidencing the purchase of the bond so recites. The plaintiff, having outlined within the contract terms and

conditions to bind the defendant, likewise is bound. The borrower subscribes and agrees to pay for the thrift bonds and is required to assign them to the syndicate. These bonds can be used for only one purpose, and that purpose is to cancel the principal note or bond. Thus the loan contract is an integral part of the bond purchase transaction. They are inseparable.

In this so-called "thrift" bond purchase, the borrower purchases nothing but a shadow intended to cover the excessive interest charge made in connection with the loan of money.

In building and loan transactions the borrower purchases stock in the association which he may, if he chooses, mature by payments and retain as an investment.

The trial court was exactly correct in its view that the whole transaction was one.

It is contended that the trial court erred in holding the transaction usurious, under the general rule that where a contract is susceptible of two constructions, one lawful and the other unlawful, the former construction will be adopted. But the transaction here involved is not susceptible of two constructions, the one lawful and the other unlawful. The contracts were drawn by plaintiff; all papers were on forms provided by it. It must be inferred that they were intended to call for what they, on their face, required.

Judgment affirmed.

CORN, V. C. J., and OSBORN, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., absent.