**REAMS et ux. v. COMMUNITY FINANCE & THRIFT CORP.**

No. 15209.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 12, 1951.

H. J. Loe, Fort Worth, for appellants.

McGown, McGown, Godfrey & Logan, Fort Worth, for appellee.

Shank, Dedman & Payne, Dallas, amici curiae.

CULVER, Justice.

The question in this case is whether or not the terms of the loan made by appellee to appellants were violative of the Constitutional provision inhibiting a rate of interest in excess of ten per cent per annum. Const. art. 16, sec. 11, Vernon's Ann.St. The facts are without dispute. In February, 1950, appellee corporation made a loan of $300 to appellants upon the execution of a note for the sum of $330, without interest, payable in twelve months. To secure this loan appellants were required to purchase a savings certificate issued by appellee corporation for the face amount of $330, bearing $1\frac{1}{2}\%$ interest per annum, which would be paid for by appellants to appellee in twelve equal monthly installments of $27.-50 each, and which would aggregate the sum of $330, the amount of the loan. It was required that this certificate be pledged to the corporation as security for the payment of the note. The note provided that if the maker defaulted in the monthly payments, the note should, at the option of the holder, become immediately due and payable. It further provided that, "in no event shall the maker be obligated or required to pay to the holder, on the principal amount loaned, in excess of ten per cent per annum in whatever way its maturity may be brought about." Appellants had the privilege of paying off the note at its maturity out of other of their funds and retain the certificate as an investment, or exchange it for one bearing a higher rate of interest. After making one payment of $27.50 on this certificate, appellants defaulted, refusing to make any further payments. Thereupon appellee corporation brought this suit on the note, praying for judgment against appellants for the sum of $330, together with interest thereon from its date of execution until paid at the rate of ten per cent per annum, and for fifteen per cent attorney's fees, as provided in said note, and for foreclosure of its lien upon the savings certificate. Judgment was accordingly rendered by the trial court in favor of appellee and against appellants.

Appellants attack the judgment rendered and the conclusions of the trial court by assigning five points of error, all to the same effect, namely, that the transaction between the parties was usurious, in that the requirement of the corporation that

appellants purchase and pay for the certificate in monthly payments was a mere device and subterfuge to permit the collection of more than ten per cent interest on the amount of money loaned to appellants.

Appellee, the Community Finance & Thrift Corporation, a private corporation, is chartered by the State of Texas, under the provisions of Article 1303b, Vernon's Tex.Civ.St., and it had complied with the provisions of Article 1524a, Vernon's Tex. Civ.St. It was authorized to loan money and to sell its securities, and the Banking Department of Texas had approved the issuance and sale of the investment security of the kind issued to appellants.

Apparently the precise question raised in this case has not been expressly passed upon by the courts of last resort in Texas, and, despite the cogent and persuasive argument made to the contrary, we regard the same as being controlled by the decisions of the Supreme Court in the building and loan cases, such as Wood v. Continental Savings & Building Association, Tex. Com.App., 56 S.W.2d 641; Hatcher v. Continental Southland Savings & Loan Association, 124 Tex. 601, 80 S.W.2d 299; and Interstate Building & Loan Association v. Goforth, 94 Tex. 259, 59 S.W. 871. No material distinction can be perceived between the building and loan plan commonly practiced in Texas and the one here under review. Each required installment payments which were credited not to the principal but, in the one case, to the purchase of shares, and, in the other, to the purchase of a certificate. In addition it may be said that the building and loan plan usually provided for a lien upon real estate, while the only security given to appellee was the certificate purchased by appellants. Appellee company sold certificates to both borrowers and non-borrowers, just as the building and loan associations sold shares. This reasoning has been followed by the Supreme Court of Minnesota in the case of Mesaba Loan Co. v. Sher, 203 Minn. 589, 282 N.W. 823, 826, a case involving exactly the same state of facts. In support of its decision denying the plea of usury, the Minnesota Supreme Court cited Interstate Building

& Loan Association v. Goforth, 94 Tex. 259, 59 S.W. 871, saying, "the court (Texas Supreme Court) held in a case analogous to the instant one that monthly payments upon stock purchased from the plaintiff and pledged as security for a loan did not constitute payment of the debt, but simply provided security for its future payment by the purchase of the stock pledged as collateral. The distinction is sound and controlling."

Appellants cite the Oklahoma Supreme Court case of Security Thrift Syndicate v. Tidwell, 190 Okl. 377, 123 P.2d 955, holding a somewhat similar transaction to be an usurious loan, but in that case the Court points out that the so-called thrift bonds were never sold to the public as investments and that the borrower had no option to keep them as such but must use them in the payment of the principal indebtedness.

We think the trial court correctly applied the law to the undisputed facts in this case, and its judgment is therefore affirmed.