**STEINER et ux. v. COMMUNITY FINANCE & THRIFT CORP.**

No. 6283.

Court of Civil Appeals of Texas. Amarillo.

March 9, 1953.

Rehearing Denied April 13, 1953.

McCarthy, Snodgrass & Haynes, Amarillo, for appellants.

Ocie Speer, Austin, amicus curiae.

Simpson, Clayton & Fullingim, Amarillo, for appellee.

MARTIN, Justice.

Appellee, Community Finance & Thrift Corporation, loaned to James R. Steiner and wife, Lorraine Steiner, the sum of $503 and received as evidence of the debt a note in the principal sum of $570 due one year from date, bearing no interest until maturity, and 10% after maturity. Appellee asserts that the note for $570 represents the principal of $503 loaned to appellants, 10% interest in the amount of $57 and a $10 charge as agreed upon for items incidental to the making of the loan. At the time of the execution and delivery of the promissory note, and as a condition to making the loan, appellee required appellants to buy a Class B Investment Certificate in the amount of $570, payable in 12 monthly installments of $47.50. This investment certificate and a chattel mortgage on the household furniture of the appellants secured the promissory note in the sum of $570.

All parties to this appeal agreed that appellee had complied with Art. 1524a–1, Vernon's Annotated Texas Civil Statutes. This statute gives to corporations the power "To lend money and to deduct interest therefor in advance at a rate not to exceed ten (10%) per cent per annum, and in addition to require and receive uniform weekly or monthly installments on its certificates of indebtedness purchased by the borrower simultaneously with the loan transaction". In this connection, the statute under Sec. 1 (c) further provides,

"(c) The making of said loan and the sale of said investment certificate, though done at the same time and as a condition to the granting of the loan, shall nevertheless be considered as two separate and distinct transactions. The periodic payments required on the installment investment certificates, hypothecated as security for the loan, shall not be considered as a periodic repayment of the loan; * * *."

An examination of the record, the admission of appellee on oral argument and Art. 1524a–1 in the light of the decisions of the courts decreeing the principles governing the issues asserted on this appeal does not substantiate as a matter of fact that the appellee fully complied with Art. 1524a–1 as so agreed by the parties on presentation of oral argument. This issue will be more fully discussed hereinafter. But, since appellants' four points place in issue on this appeal only the constitutionality of Art. 1524a–1 under the assumption of the parties that appellee had fully complied with the provisions thereof, the principal issue before this court is whether or not Art. 1524a–1 violates the provisions of Sec. 11, Art. 16 of the Constitution of the State of Texas, Vernon's Ann.St. prohibiting the charging of interest in excess of 10%.

Appellants' first point asserts that the trial court erred in failing to hold that Art. 1524a–1, § 1 (a) (c) was unconstitutional in that same constitutes a legislative subterfuge to circumvent Sec. 11, Art. 16 of the Constitution of the State of Texas. This point is based on the proposition that the execution and delivery of the $570 note due one year from date and the purchase of the Class B Investment Certificate in amount $570 and payable $47.50 monthly were but one transaction and that the monthly payments of $47.50 as made on the investment certificate were in truth and in fact merely payments on the note indebtedness and that since the principal of the note indebtedness was being reduced monthly, the interest of $57 deducted in advance thereon was usurious as being in excess of 10% per annum and that Art. 1524a–1 authorizing such procedure was therefore in violation of Sec. 11, Art. 16 of the Constitution.

In deference to the authorities which have heretofore decreed the principles under which the constitutionality of the statute here in issue is to be determined, appellants' first point of error is overruled and Art. 1524a–1, § 1(a) (c) is held to be within the constitutional limitation as to interest charges. In Reams v. Community Finance & Thrift Corporation, Tex.Civ.App., 236 S.W.2d 185, 186, the court of civil appeals, passing on an investment certificate loan plan practically duplicating the statutory provision here in issue, ruled as follows:

"Apparently the precise question raised in this case has not been expressly passed upon by the courts of

last resort in Texas, and, despite the cogent and persuasive argument made to the contrary, we regard the same as being controlled by the decisions of the Supreme Court in the building and loan cases, such as Wood v. Continental Savings & Building Association, Tex. Com.App., 56 S.W.2d 641; Hatcher v. Continental Southland Savings & Loan Association, 124 Tex. 601, 80 S.W.2d 299; and Interstate Building & Loan Association v. Goforth, 94 Tex. 259, 59 S.W. 871."

The opinion of Reams, supra, further points out that no material distinction can be perceived between the building and loan plan commonly practiced in Texas and the certificate plan in issue in the Reams case. It is particularly noteworthy in. Reams v. Community Finance and Thrift Corp. supra, that the court in regard to there being no distinction between the building and loan plan and the certificate plan ruled as follows: "Appellee company sold certificates to both borrowers and non-borrowers, just as the building and loan corporation sold shares." It is also noteworthy that in distinguishing Court's ruling in the Reams case from a like issue ruled on by the Supreme Court of Oklahoma in Security Thrift Syndicate v. Tidwell, 190 Okl. 377, 123 P.2d 955, where such a plan was held unconstitutional, the court pointed out as one basis for the distinction the following issue, "in that case [Tidwell Case] * * * the so-called thrift bonds were never sold to the public as investments." The above matters will also be discussed later in the opinion on another phase of the case.

Although Reams v. Community Finance & Thrift Corp., supra, is not a specific ruling as to the constitutionality of Art. 1524a–1, the case does decree the legality of a loan and investment certificate proceeding directly exemplifying the power authorized by such statute. Under prior rulings of the supreme court decreeing the legality of procedure like that here in issue and the above direct ruling by the court of civil appeals pronouncing the legalities of the procedure as to issuance of investment certificates at the time of making a loan, it appears to be a sound proposition of law that a statute authorizing and outlining the same procedure would be a legal and constitutional enactment of law.

The concept here as to the constitutionality of Art. 1524a–1 is based on the principle that the Supreme Court of Texas has placed its sanction of constitutionality on this type of loan procedure under the theory that the execution of a note to a corporation and the simultaneous purchase of stock issued by the corporation as a prerequisite to obtaining such loan are two separate and distinct transactions and that the monthly payments on the stock are not payments on the loan which reduce the principal of the debt and the corresponding interest collectable thereon. Wood v. Continental Sav. & Bldg. Ass'n, Tex.Com.App., 56 S.W.2d 641; Interstate Building & Loan Ass'n v. Goforth, 94 Tex. 259, 59 S.W. 871 Syl. 5; International Bldg. & Loan Ass'n v. Abbott, 85 Tex. 220, 20 S.W. 118; Gregg v. North Texas Building & Loan Ass'n, Tex.Civ. App., 82 S.W.2d 1093.

■ Appellants' second point asserts that the trial court erred in not holding Art. 1524a–1 unconstitutional in that the same permits usurious interest in violation of Sec. 11, Art. 16, of the Constitution of the State of Texas. Under this point, it is the Appellants' contention that a fee of $8 paid to appellee as expenses for checking the security· and credit responsibility of appellants, together with a fee of $.75 for recording the chattel mortgage and a further fee of $1.25 to the American Credit Bureau for a credit report, were not permissible charges and constituted interest in excess of 10% in direct violation of Sec. 11, Art. 16 of the Constitution.

Under appellants' second point, the principal issue is whether the services above mentioned were actually rendered and whether the sums charged therefor were reasonable charges for the same. The Supreme Court of Texas in Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 1049, 109 A.L.R. 1464, held that fees paid a party for inspection of security for the debt and for ruling on the solvency of certain sureties as well as a sum paid as attorney's fees for legal work were proper charges and did not

constitute interest in violation of the constitutional prohibition against usury. There is one disturbing feature as to the rule found in Syl. 2 & 3 of Nevels v. Harris, supra, in that the rule laid down by the Supreme Court specifies that the above shown fees charged for checking the security and for legal work were not interest under our usury law "where such agents have only limited or special authority, *and the lender does not participate in the funds so paid*." (Emphasis added.) The record in the cause here at issue does not reveal that the particular fee of $8 as charged for checking the mortgaged security was paid to the agent who actually checked the security but such fee was paid to an agent of the corporation in charge of the corporation's business. Several of the cases examined on the issue as to fees charged contain the same language as that found in the opinion of the supreme court as quoted and emphasized hereinabove. But an examination of Greever v. Persky, also by the Supreme Court of Texas, 140 Tex. 64, 165 S.W.2d 709, 712, reveals the following language:

"Admittedly, a lender may, without violating the usury law, make an extra charge for any distinctly separate and additional consideration other than the simple lending of the money".

The limitation that "the lender does not participate in the funds so paid", as found in Nevels v. Harris, supra, is not found in Greever v. Persky, supra. Therefore, it is a natural assumption that such limitation on the charging of funds for legitimate expenses and details as to making a loan is not brought forward in the later ruling of the supreme court. Apparently, no such distinction should be drawn in that it should be recognized that if the investigating agent is paid a salary for such services by the corporation rather than by the actual delivery to him of the fees as charged for the service of checking the security, there is no material difference in principle. Appellants' second point is overruled under the authorities hereinabove cited.

Appellants' third point is overruled under the principle that the right to discount is not solely vested in banking corporations. Kaliski v. Gossett, Banking Com'r, Tex.Civ.App., 109 S.W.2d 340 (writ refused). The provision of Art. 1524a–1 requiring $50,000 as the minimum paid in capital of a corporation formed under the statute is a reasonable regulation of such corporations by the legislature and appellants' point four asserting that such regulation is in violation of Art. 1, Sec. 3 of the Constitution is accordingly overruled. Friedman v. American Surety Co. of New York, 137 Tex. 149, 151 S.W.2d 570, 576; Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556.

The rulings hereinabove stated dispose of the points of error under precedents heretofore laid down by the Court of Last Resort in Texas and the discussion hereinafter does not constitute a ruling on any issue as raised by point of error but is a discussion of the pertinent issues as to the loan transaction and statute in issue as shedding light thereon. That provision of Art. 1524a–1 which declares that the making of loans and the selling of certificates of investment are two separate and distinct transactions and that periodic payments required on the certificates of investment shall not be considered as periodic payments on the loan is pure fiction. The record in the cause reveals that when appellants made and delivered the note in the sum of $570 due in one year, that as part of the same transaction and at the same time, they were required to purchase a Class B Investment Certificate from the appellee in the like sum of $570 and payable $47.50 per month for 12 months. It is undisputed that the purchase of such certificate is a mandatory requirement to the obtaining of a loan. When such Class B Certificate is paid out in 12 monthly payments it is true that the same may be exchanged for a Class A Certificate and this certificate may be held as an investment by appellants. But it is clearly evident that the payments of $47.50 per month, purportedly made on the investment certificates, are merely used to retire the $570 note due in one year from date of execution. Since appellee had already collected the sum $57 as interest on the $503 principal for one year, it is obvious that in making the monthly payments on the invest-

ment certificate, which payments were in truth and in fact merely monthly payments on the loan debt, the principal of the $570 note was reduced monthly and the 10% interest for one year as collected in advance on the note was in excess of the limitation of 10% set by the constitution.

Without reference to the authorities cited above, which we consider controlling as to rulings heretofore made on the issues before the court by point of error, under the facts shown in the paragraph above, the opinion is here expressed that Art. 1524a–1 is merely a legislative provision authorizing the charging of interest in excess of 10% and such statute should be held in violation of Sec. 11, Art. 16 of the constitution. Further the practices authorized thereby should likewise be declared in violation of the same constitutional provision. The principles here expressed are not without precedent in Texas. Cotton State Bldg. Co. v. Reily, Tex.Civ.App., 50 S.W. 961; People's Building, Loan & Savings Ass'n v. Rising, Tex. Civ.App., 34 S.W. 147 (writ refused); People's Building, Loan & Savings Ass'n v. Marston, 30 Tex.Civ.App. 100, 69 S.W. 1034 (writ refused.)

In addition to the opinion expressed hereinabove, although not raised by point of error, the following issues are discussed as they also shed further light on the loan transaction. Even though the loan transaction in issue should be within the provisions of Art. 1524a–1, usurious interest was actually charged on the loan debt. The record shows without dispute that appellants received the sum of $503 on executing the note. The record likewise shows without dispute that interest of $57 was paid on this sum for one year. "In such case, for the purpose of testing the contract for usury, the real principle is the amount actually received by the borrower." Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939, 940; Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204; Temple Trust Co. v. Sewell, 133 Tex. 417, 126 S.W.2d 943.

As pointed out initially in this opinion, the parties agreed that appellee had complied with Art. 1524a–1 and appellants' points of error only raises the issue as to constitutionality of Art. 1524a–1. It is true the record itself, in so far as it goes, does not reveal that appellee failed to comply with the provisions of the statute. But, on oral argument appellee admitted that its Class B Investment Certificates, the type in issue here, could not be purchased by the general public, but were only sold to parties obtaining loans from the corporation. Art. 1524a–1 provides under Sec. 1(b) that the corporation has the power to "issue and sell certificates of investment, either fully paid or on the installment plan". The statute does not provide that the corporation shall sell investment certificates only to persons obtaining loans from the corporation. This issue is of particular import in view of the fact that the appellate courts, under the ruling that the making of loans and the selling of building and loan stock, or investment certificates, constitute a dual transaction, have consistently decreed the following rule as a test for determining whether such acts constitute a dual transaction, " * * * according to the law governing building and loan associations, a person could be either one or both, that is to say, a person *could be merely an owner of shares in the association,* or he could be an owner of shares and also a borrower of money." (Emphasis added.) Wood v. Continental Savings and Building Association, supra [56 S.W.2d 643(2).] As pointed out hereinabove, in Reams v. Community Finance & Thrift Corp., supra, not only is the above rule affirmed but such rule is likewise cited as one of the principle elements distinguishing the Reams case from Security Thrift Syndicate v. Tidwell, 190 Okl. 377, 123 P.2d 955 wherein such a loan and certificate transaction was held to be usurious.

Although the issue discussed above is not presented under appropriate point of error, the admission of appellee made on oral argument established that appellee corporation issued B certificates only to borrowers. Under such admission, the appellee was not in fact complying with all of the provisions of Art. 1524a–1 under the above test decreed by the courts of Texas as a method of ascertaining the dual nature of such loan transactions. Furthermore, as pointed out hereinabove, the loan in fact

bears usurious interest when tested by the decisions of the Supreme Court of Texas.

The issues discussed hereinabove, as stated, are not presented by point of error, but are incorporated herein as the same not only shed light on the loan transaction but also substantiate the opinion here expressed that in the absence of precedent which is considered binding on the court, an examination of the statute and the entire transaction here in issue, impels the opinion that Art. 1524a–1 is merely a cloak under which usurious interest is charged in violation of the Constitution of the State of Texas.

In deference to precedents considered as binding on this court, appellants' points of error are overruled, and the judgment of the trial court is affirmed.