## WOOLDRIDGE v. STATE.

### No. 14637.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 3, 1944.

Rehearing Denied Dec. 1, 1944.

Grindstaff, Zellers & Hutcheson, of Weatherford, for appellant.

Nolan Queen, of Weatherford, for appellee.

B. L. Agerton, Mark McGee, Dan E. Lydick, and B. E. Godfrey, all of Fort Worth, amicus curiae.

BROWN, Justice.

The Honorable Nolan Queen, County Attorney of Parker County, Texas, brought suit against appellant, Charles Wooldridge, invoking the provisions of an act of the 48th Legislature passed in 1943, known as Senate Bill No. 43, and being Chapter 144 of said Acts, Vernon's Ann.Civ.St. art. 4646b.

The said County Attorney sought to invoke the provisions of this Act which empower such an officer to seek injunctive relief against one who makes loans and "habitually" charges usurious interest, defining the term "habitually."

In Section 2 of the Act is found the following definition of "usurious interest": "By the term 'usurious interest', as used in this Act, is meant interest at a rate in excess of ten (10%) per centum per annum."

Section 2a following such definition provides:

"Nothing in this Act shall in any way modify, alter or change any valid provision of Article 8 of Chapter 5 of House Bill No. 79, Acts of the Regular Session, 48th Legislature, nor shall anything in this Act prevent charging of any actual and necessary expense, now or hereafter permitted and authorized by law, and such shall not be considered interest.

"In the trial of any application for injunction under this Act there shall exist a prima facie presumption that the actual and necessary expense of making any such loan was One ($1.00) Dollar for each Fifty ($50.00) Dollars, or fractional part thereof loaned; but this prima facie presumption shall extend only to the first note or debt owing at the same time by an individual to any person, firm, corporation, partnership or association, and shall not apply to any renewal or extension thereof unless the original note or debt and all extensions thereof were for a period of not less than sixty (60) days."

It is noted that this Act appears to attempt to tie in with House Bill No. 79 passed also by the 48th Legislature, same being known as Chapter 97 of the Laws of the 48th Regular Session, and also known as "The Texas Banking Code of 1943." Vernon's Ann.Civ.St. art. 342—101 et seq.

Chapter V of said "Code" and Article 8 thereof was passed to govern the charges that may be made for making loans. Article 8 is as follows: "No bank shall charge or collect any loan fee or any other charge, by whatever name called, for the granting of a loan. Provided, however, a bank may require an applicant for a loan or discount to pay the cost of any abstract, attorney's opinion or title insurance policy, or other form of insurance, and filing or recording fees or appraisal fees. Expenses necessary or proper for the protection of the lender, and actually incurred in connection with the making of the loan may be charged, and further provided that a bank may charge any borrower the reasonable value of services rendered in connection with the making of any loan, including the drawing of notes, the taking of acknowledgements and affidavits, the preparation of financial statements, and the investigation or analysis of the financial responsibility of the borrower or any endorser, surety or co-signer, in an amount agreed upon, but not to exceed One Dollar ($1) for each Fifty Dollars ($50) or fractional part thereof loaned; but the charges for such services shall not be deemed a loan fee or interest or compensation for the use of the money loaned; and the last charge next above shall not be collected unless the loan is actually made."

Defendant Wooldridge answered denying that he had charged or collected any usurious interest and asserted that he had only made such charges as are provided for by the very law on which the plaintiff bottoms his suit. The plaintiff insists that the statutes on which Wooldridge relies are unconstitutional and void.

The agreed statement of facts discloses that Wooldridge has charged only such sums as are warranted in the provisions of the law. The trial court rendered judgment for the plaintiff, and found that the statutes on which defendant relies "are unconstitutional and that by reason thereof the 'service charge' as made by the defendant in connection with each loan is illegal." The injunctive relief sought by the plaintiff was granted, and the judgment is as follows: "It is therefore the order, judgment and decree of the court that the injunction as prayed for by the plaintiff be granted and that a writ of injunction issue restraining the defendant from collecting the 'service charge' upon any loan made by him."

The prayer in the petition is that "defendant be permanently enjoined and restrained from demanding, receiving or by the use of any means attempting to collect from any borrower on any loan heretofore made any usurious interest, and that he be further permanently enjoined from hereafter contracting for or charging any person, firm or corporation for the use and detention of money interest in excess of ten (10%) percent per annum, and for such other and further relief in law and in equity to which he may show himself entitled."

Article XVI, and Section 11 of the State Constitution, Vernon's Ann.St., provides: "All contracts for a greater rate of interest than ten per centum per annum, shall be deemed usurious, and the first Legislature after this amendment is adopted, shall provide appropriate pains and penalties to prevent the same."

The case was tried upon a written stipulation of facts. The stipulation recites that the defendant is now and has been

748

since the month of October, 1943, engaged in making loans in Parker County, upon both a secured and an unsecured basis, and that he has made the loans, among others, which are referred to in the stipulation. Seven such loans are thus referred to. The first is described as follows:

"1. Loan to Hugh M. Miller, note dated November 1, 1943, for the sum of Thirteen and Sixty/100 Dollars ($13.60). This amount was arrived at as follows: Cash— $12.00; Interest, ten percent. (10% per annum, amounting to sixty cents ($0.60); service charge $1.00; total $13.60."

The other six loans are described in somewhat similar fashion.

The concluding paragraph of the stipulation reads as follows: "8. The parties agree that the 'interest' collected in each of the above loans was set at the rate of ten (10%) per cent per annum for the time the loan was to run, and that the recording fees, costs of inspection of securities, costs of preparing mortgage papers are the usual and customary charges and are reasonable; and that the 'service' charge was made pursuant to Article 4646b, Vernon's Annotated Civil Statutes, Acts of the 48th Legislature, Chapter 144, page 227; and Article 8, Chapter 5, House Bill 79, Acts of 48th Legislature; and that said 'service charge' was the average or normal sum required to compensate the lender for particular services rendered to particular borrowers in making the loans herein described and above set forth."

In his answer defendant alleged that "under the terms of Article 4646b, Vernon's Annotated Civil Statutes of Texas, Chapter 144, Page 227, in Section 2a thereof, defendant is permitted to charge the sum of one ($1.00) Dollar for each fifty ($50.-00) dollars, or fraction thereof loaned, and that said section of said Act is valid and constitutional, and that defendant made more than three loans but has not charged more than ten (10%) percent interest thereon, plus the service charge permitted thereunder." He admits making the so-called "service charge" on loans but alleges that it was not "for the use and detention of the money but to pay the reasonable costs of making the loan." He alleges that the service charge is authorized by Article 4646b, above cited, and by House Bill 79, which is known as ".The Texas Banking Code of 1943."

■ The Texas Banking Code of 1943 is plainly limited in its operation to banks, and to certain other financial institutions therein named, and Article 8, chapter 5, of the Code provides only that banks may make the charges therein set forth. Defendant is a private individual. Although engaged in the business of making loans, it seems clear to us that none of the provisions of the Texas Banking Code apply to him, or to this case. It is therefore not only unnecessary, but it is irrelevant to any issue presented in this case, to undertake to interpret Article 8 of the Banking Code, or to determine its validity.

■ We are unable to find anything in Article 4646b which conflicts with the constitutional provision prohibiting the charging of usurious interest. Constitution of Texas, Article XVI, Section 11. If the entire Article of the statute is invalid, then there exists no authority for maintaining this injunction suit. Ex parte Hughes, 133 Tex. 505, 129 S.W.2d 270. In its brief, however, appellee contends only that Section 2a of the Act is unconstitutional. Section 2a may be divided into three parts. The opening clause of the section provides that nothing in the Act shall in any way modify, alter or change any valid provision of the Banking Code. It hardly requires discussion to demonstrate that nothing in this clause is in violation of Article XVI, Section 11, of the Constitution. The next clause provides that nothing in the Act shall prevent charging of any actual and necessary expense, now or hereafter permitted and authorized by law, and that such shall not be considered interest. The clause is so plain that it is not necessary to call attention to its qualifying phrase "now or hereafter permitted and authorized by law." It contains no suggestion that charges may be made that are forbidden by the Constitution. The implication of the language used is quite to the contrary. The third part of the section simply provides that in the trial of any application for injunction under the Act there shall exist a prima facie presumption that the actual and necessary expense of making such a loan was $1.00 for each $50.00, or fractional part thereof, loaned. It is not necessary to cite authority for the proposition that the lender may charge the borrower for certain types of expenses incurred in making the loan, and that such charges are not interest. A common example is the fee of the attorney who examines title to the mortgaged property. Another is the brokerage fee paid to some third party who procures the loan. Re-

cording fees are another example. The third part of Section 2a simply provides that in a suit brought under Article 4646b to enjoin a lender from making usurious loans, there shall be a prima facie presumption that a charge made by the lender was made to cover actual expenses of making the loan, if it was not more than $1.00 for each $50.00 loaned. Under elemental rules of law, this provision only serves to relieve the lender of the burden of proving such expenses so long as there is no proof to the contrary. In the case before us resort need not be had to the statutory presumption, since the parties stipulated as to the actual facts. The Legislature simply created a remedy where none existed before Article 4646b was enacted. The rule of procedure enacted in connection therewith appears to be a reasonable one, and does not of itself purport to authorize the collection of usurious interest.

To sum up what has been said thus far, Article 8 of the Banking Code is not applicable to this case because no bank is involved, and Article 4646b contains nothing which can be construed as an effort to legalize the collection of any charges other than those allowed by existing law. The charges made in the case before us must therefore be tested by the rules announced in our decisions, since there is nothing in Article 4646b to the contrary, other than the procedural rule relating to the prima facie presumption above mentioned; and even that procedural rule is inapplicable here because the facts are stipulated.

The burden rested upon appellee to show facts warranting the issuance of the injunction. In other words, it was incumbent upon appellee to prove that the charges made by appellant were not for legitimate expenses of making the loans. It is stipulated that a service charge was made. The expression service charge is perhaps meaningless in the absence of evidence to show the purpose of the charge. The expression is not found in either Article 8 of the Banking Code or in Article 4646b. We have only the stipulation of facts to look to in order to determine what the parties meant by the expression. It is true that the parties stipulated that the service charge was made pursuant to Article 4646b, and Article 8 of the Banking Code, but as has been said, the Banking Code does not apply to defendant, and Article 4646b contains no language of such import. The most that can be said is that defendant erroneously thought that these statutes authorized him to make the so-called service charge. The only evidence as to what the service charge was is the stipulation that "said service charge was the average or normal sum required to compensate the lender for particular services rendered to particular borrowers in making the loans herein described and above set forth." What the "particular" services were we do not know. If they were of such kind as that the lender could not charge for them without violating the usury laws, the burden was upon appellant to prove it. If the proper construction of this stipulation be that it proves nothing, then we encounter the statutory presumption in favor of the validity of the charge. The stipulation as to other charges made, such as recording fees, costs of preparing papers, and the like, is clearly insufficient to show that they were in violation of the usury laws.

In reaching the conclusions we have made, we are of opinion that the provisions of Article 8 of "The Banking Code" cannot be made to apply to the appellant or to any other person, firm, association or corporation by and through the "negative" language that was employed in the Act under discussion and its Section 2a. We believe that to effect such a purpose it is necessary to amend "The Banking Code" so as to affirmatively include appellant and others situated as he, or that such provisions of said "Code" as the Legislature may desire to make applicable to appellant and others should have been or should be re-enacted in the Act here under review.

With no desire to be blunt or disrespectful, we are compelled to say that the judgment as rendered is too indefinite and thus appears to be too far-reaching to be permitted to stand.

We must assume that the injunction writ, if and when issued, will follow the exact language used in the judgment. Assuredly it cannot be lawfully enlarged.

Believing as we do that there are "service charges" that may be lawfully added to and included in a proper loan, we cannot permit the judgment to stand as it now appears.

We are of opinion that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.