## HATRIDGE v. HOME LIFE & ACCIDENT INS. CO. et al.

### No. 14419.

Court of Civil Appeals of Texas. Dallas.
Dec. 21, 1951.

Rehearing Denied Feb. 29, 1952.

David C. McCord, Jr., of Dallas, for appellant.

Irion, Cain, Bergman & Hickerson, of Dallas, for appellees.

Junior Bar Ass'n of Dallas, acting through Walter M. Spradley, its President, and H. B. Houston, all of Dallas, amici curiae.

YOUNG, Justice.

The suit in sum is an attack on Art. 4764c, V.A.C.S.,[1] as unconstitutional.

In July 1950, Hatridge consummated a loan of $200 with lender Ware, receiving that amount in cash; the transaction being evidenced by note for $246.12 payable in twelve equal installments of $20.51. The total amount due included (along with prepayment of interest) the premium charge on a credit life, health and accident policy of insurance, also a "hospitalization and surgical expense policy." Some two months thereafter and before making any payments, Hatridge concluded that the transaction was illegal, in that the requirement of insurance and cost of premiums constituted additional compensation for use of money, i. e., interest; rendering the contract usurious within meaning of our State Constitution and Laws; petitioner seeking cancellation of aforesaid note upon tender of the $200 received. Defendant's insurance company and V. L. Ware filed general denial, the latter pleading a cross action on the note. The court upon hearing rendered judgment against plaintiff for full amount of note less unearned interest, holding Art. 4764c in all respects constitutional, with result of this appeal.

Above terms of the note (dated July 27, 1950) were made part of an agreed statement of facts. These stipulations in effect were that, as a condition of loan, plaintiff was to purchase a policy of credit life, health and accident insurance, making V. L. Ware "first beneficiary," as further security in event of contingencies covered by said policy; plaintiff being advised, however, that he was free to purchase the insurance from any reputable company so long as Ware was made beneficiary; that defendant Ware charged plaintiff the sum of $17.10 as premium on the credit life, health and accident insurance; plaintiff also requesting but defendant not requiring the issuance of a hospitalization policy, premium $18.25, which was furnished, and these sums plus $10.77 interest in advance were added to face of the note,—a total of $246.12; that said Ware, lender, and agent for Home Life & Accident Insurance Company, received the commission (amount not stated) from the insurance company on all of said policies; that plaintiff made no payments on the note, failing and refusing to do so, and has tendered into court the sum of $200, claiming same to be in full of his obligation under Art. 16, sec. 11, State Constitution, Vernon's Ann.St., and Art. 5071, V.A.C.S.

Art. 4764c, V.A.C.S., is a codification of an Act of the 51st Legislature, p. 132, Ch. 81, regulative of credit life, and credit health and accident insurance, defining same as personal insurance in which the insured is a borrower of a sum of money

1. Art. 4764c and subdivisions was repealed by Laws of 52nd Legislature, Ch. 491, p. 868, upon passage of Insurance Code, where former Art. 4764c appears as Art. 3.53, sub-chapter E.

not exceeding $1,000 from a lender, who retains an interest in the insurance as security to such loan, and any other personal insurance written in connection with or as a part of such loan transaction. The Act provides in detail for the supervision of such companies by the State Board of Insurance Examiners; relating, for instance, to maximum rates and commissions to be charged and received by lenders as agents of insurers or by other agents for the writing of credit insurance; the following sections being especially under attack on this appeal: "Sec. 4. No lender or lender agent shall hereafter require as a condition for the making of a loan that the borrower purchase either credit life or credit health and accident insurance from such lender, lender agent or any insurer represented by them. It shall be permissible for such lender or lender agent to require of a borrower such credit life or credit health and accident insurance or both as a condition for making the loan, if, and only if, the borrower is given the option to purchase such insurance from any insurer or insurance agent of his own choice. It is the intent of this section to prohibit coercion of insurance and to preserve to each citizen the right to choose his own insurer and insurance agent.

"Sec. 5. No insurer, insurance agent, lender or lender agent shall knowingly solicit, issue or deliver or knowingly permit to remain in effect or force, more than one policy of credit life insurance or more than one policy of credit health and accident insurance, either or both in connection with any loan, irrespective of the number of persons obligated on the loan.

"Sec. 6. Commissions received by lenders, lender agents and insurance agents from insurers for the writing of credit insurance complying with the terms of this Act, the maximum rates promulgated by the Board, and rules and regulations of the Board of Insurance Commissioners, shall be considered for all purposes as compensation for services rendered to such insurer and shall not be taken to be an interest charge on the money borrowed; provided, however, should such commissions be in excess of any maximum fixed hereunder, then such commissions shall be deemed to be an interest charge on the money borrowed. No agreements by insurers with any of its agents shall permit contingent commissions based on loss experience."

The Constitution of Texas, Art. 16, sec. 11, provides: "All contracts for a greater rate of interest than ten per centum per annum, shall be deemed usurious, and the first Legislature after this amendment is adopted, shall provide appropriate pains and penalties to prevent the same; * * *." And Art. 5071, V.A.C.S., recites in part: "* * * all written contracts whatsoever, which may in any way, directly or indirectly, provide for a greater rate of interest (than ten per cent) shall be void and of no effect for the amount or value of the interest only; but the principal sum of money or value of the contract may be received and recovered." It is appellant's contention that in view of the constitutional prohibition just quoted, the payment to defendant Ware of commissions incident to issuance of this credit insurance constituted usury, i. e., additional compensation to the lender for the loan of money; and that sec. 6, Art. 4764c, reciting that such payment of commission "shall not be taken to be an interest charge on the money borrowed", is in conflict with said Constitutional proviso and void. Our question narrows to a determination of whether the 1949 Act, Art. 4764c, is a valid exercise of legislative power. In this connection the following general discussion is pertinent.

First, "Whereas the Congress of the United States has only such powers as are granted by the Federal Constitution, the state legislature is conceded to be at liberty to pass any act which is not in violation of some provision of the state or federal constitution." 9 Tex.Jur., p. 444. "All power which is not limited by the Constitution inheres in the people, and an act of a state legislature is legal when the Constitution contains no prohibition against it." 11 Am.Jur., p. 619. Watts v. Mann, Tex.Civ. App., 187 S.W.2d 917, writ ref. Second, aforesaid constitutional provision is self-executing only to the extent of rendering illegal all usurious contracts. 9 Tex.Jur., p. 423; Carder v. Knippa Mercantile Co.,

Tex.Civ.App., 1 S.W.2d 462; Watts v. Mann, supra; as illustrated by Watson v. Aiken, 55 Tex. 536, and Hemphill v. Watson, 60 Tex. 679, where the contract itself disclosed a prohibited rate of interest. Nor does the Constitution define "interest," Art. 16, sec. 11, not being worded so as to create actionable rights and enforceable remedies *in all cases* without the aid of legislation. Following the 1891 amendment, sec. 11, Art. 16, the Legislature proceeded to define interest as "compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money", with conventional interest at not exceeding 10%, Art. 5069, and legal interest at 6%, Art. 5070; usury being defined as "interest in excess of the amount allowed by law;" with Art. 5071, already quoted in part, supplying other deficiencies.

■ Third, "Admittedly, a lender may, without violating the usury law, make an extra charge for any distinctly separate and additional consideration other than the simple lending of the money (42 Tex.Jur. 932; Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 109 A.L.R. 1464); * * *." Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709, 712. "A collateral transaction between the borrower and lender, whereby the lender may take profit, will not render the loan usurious when such transaction was entered into in good faith and without usurious intent." C. C. Slaughter Co. v. Eller, Tex. Civ.App., 196 S.W. 704, syl. 14. And Fourth, power of the Legislature to broaden the common law definition of "interest" was recognized by the Supreme Court in Parks v. Lubbock, 92 Tex. 635, 51 S.W. 322; and recent Legislatures have given further sanction to the rule stated in Greever v. Persky, supra, by declaring that certain things, including insurance premiums, shall not be regarded as interest. See Art. 342–508, V.A.S., Texas Banking Code; Art. 4646b, V.A.S., the latter statute having been held constitutional: Watts v. Mann, supra; Wooldridge v. State, Tex.Civ.App., 183 S.W.2d 746; Wilkenfeld v. State, Tex. Civ.App., 189 S.W.2d 80.

Turning to the Act in question, it will be noted that Art. 4764c is a legislative attempt at comprehensive regulation of a form of insurance (already known in practice) in connection with loans not exceeding $1,000; recognizing the necessity of *personal* insurance as further security in such transactions; preserving to each borrower the right to choose his own insurers and insurance agents; and bringing within the definition of "interest" the exaction of premiums and commissions on credit life, health and accident insurance in excess of those permitted by law. Even prior to effective date of the statute under consideration, this Court had held that a requirement of personal insurance as additional security to the lender was lawful, "provided the plan is not a cover for usurious loans." Texas Finance & Thrift Ass'n v. State, Tex.Civ. App., 224 S.W.2d 522, 523.[2] Other recent decisions involving personal insurance in connection with loans prior to Art. 4764c, are Denton v. Ware, Tex.Civ.App., 228 S. W.2d 867, Ware v. Heath, Tex.Civ.App., 237 S.W.2d 362, and Rodriguez v. R. P. Youngberg Finance, Ltd., Tex.Civ.App., 241 S.W.2d 815; the case first cited holding that the charge for insurance evidenced a benefit conferred under the contract aside from the use of money—not interest; the second merely holding that the contract was one of insurance. In the Rodriguez appeal, the transaction involved more than $1,000 and occurred just prior to enactment of Art. 4764c; yet many regulations of the State Insurance Board involving identical subject matter had been promulgated and were in force. In the course of its opinion, the El Paso Court was required to discuss sec. 6, here under attack; holding that insurance expense made part of the loan (same as in the instant case) was clearly an additional benefit to the borrower, in-

2. Our holding in the cited case that "The latter statement is made in view of section 2a, Art. 4646b, making Art. 342–508, State Banking Code, a part thereof" is not entirely accurate. The same is hereby modified so as to conform to the conclusions reached in Wooldridge v. State, Tex.Civ.App., 183 S.W. 2d 746–749, where the same language of subd. 2a, Art. 4646b, was under construction.

clusion thereof not rendering the contract usurious.

 The agreed stipulations do not show the percentage of commission retained by Ware or that the premium charged was in excess of rates promulgated by the Board, and in consequence, we must assume a compliance with regulations in that respect. From the cases cited in 42 Tex.Jur. 932, it would appear that when not governed by statute, each case turns on its own facts as to whether the transaction involving an additional charge is one made in good faith, distinct from a charge for use of money; in other words, a mere device or cover for usury. But where the matter of the collateral transaction is regulated by a valid statute, which is complied with, there can be no issue of fact as to good faith concerning a benefit allowed thereunder in addition to interest. The purpose of Art. 4764c is to render bona fide any transaction made in accordance with its terms, just as under Art. 881 et seq., V.A.S., a building and loan association cannot "be adjudged to have devised a scheme to conceal usury if all its actions were authorized by a valid statute." Continental Savings & Building Ass'n v. Wood, Tex.Civ.App., 33 S.W.2d 770, 772, affirmed, Tex.Com.App., 56 S.W.2d 641; 42 Tex.Jur., p. 888.

 As to validity of this legislation, even if doubtful, we would be required to sustain it. 9 Tex.Jur., p. 478. Neither are we at liberty to invalidate it, though in our opinion same may be inexpedient or unwise. 9 Tex.Jur., p. 490. It may be said in favor of the measure that prima facie it protects the small borrower from exorbitant rates, and coercion of insurance that bears no reasonable relation to the benefits conferred. Appellant has not demonstrated that Art. 4764c is anywise in conflict with the constitutional inhibition against usury; and considered as a whole in view of its emergency clause, the Act evidences a valid exercise of legislative power.

Appellant further argues that, aside from any question of constitutionality, the trial court erred in holding that issuance and sale of the hospitalization policy (referred to as Exhibit 3, agreed statement of facts) was not violative of sec. 5 already quoted. Otherwise stated, it is argued that appellee lender has knowingly issued or delivered, or knowingly permitted to remain in effect or in force, more than one policy of credit life insurance and credit health and accident insurance, either or both in connection with a loan, with result that Ware's commission on the hospitalization policy (premium $18.25) should "be deemed an interest charge on the money borrowed." If we may assume that the greater part of this premium has been retained by the lender as commission, Wilson v. Whitworth, 197 Ark. 675, 125 S.W.2d 112, such amount when added to the stipulated interest of $10.77 would obviously reflect a usurious transaction.

Art. 4764c, sec. 1, B(1), recites in part: "'Credit Life Insurance,' and 'Credit Health and Accident Insurance' mean personal insurance in which the insured are borrowers of sums of money not exceeding One Thousand ($1,000.00) Dollars from lenders who retain an interest in the insurance as security to the loan, and any other personal insurance written in connection with or as part of such loan transaction." By sec. B(2), the Act applies only to credit life insurance and credit health and accident insurance. Under section 7, B, C, and D, credit life policies insure against contingency of death from any cause whatever, and shall not extend more than one month beyond term of loan, premiums being considered fully earned when paid. Credit life and accident policies insure against contingency of disability from sickness and accident originating and occurring within the policy term which likewise shall not extend more than one month beyond period of the loan. The latter policy is subject to cancellation by insured on payment of loan with return of unearned premium,—both policies being noncancelable by the insurer. The hospitalization policy protects the applicant and dependent members of his family against losses caused by hospital expenses resulting from accidental bodily injury or sickness while same is in effect as limited by its detailed schedule of indemnities. This insurance is both cancelable and renewable at option of the company.

■ It is appellees' contention on the other hand that the prohibition of Art. 4764c, sec. 1, B(1), relates only to excessive issuance of policies dealt with by the Act; i. e., credit life and credit health and accident, wherein the lender is beneficiary; not extending to a policy of hospitalization covering entirely different contingencies of indemnities paid to the insured; further arguing that to hold the voluntary purchase by appellant and issuance of the latter policy as violative of the Act would be in derogation of a constitutional freedom of contract. The insurance under discussion (providing indemnity for hospital and surgical expense), though not credit life and credit accident in kind, plainly constitutes "other personal insurance written in connection with or as part of such loan transaction", sec. 1, B(1), and hence prohibited under express language of sec. 5; the commission derived from its writing becoming additional interest on the money borrowed, within meaning of sec. 6.

■ Nor was the limitation of no more than one policy in connection with any loan subject to constitutional objection. The borrower was left free to contract for this additional insurance from other companies, or for that matter, from the immediate lender, if not made a part of the particular loan. Freedom of contract may be limited where there are visible reasons of public policy for the limitation. Minnesota Iron Co. v. Kline, 199 U.S. 593, 26 S.Ct. 159, 50 L.Ed. 322; 11 Am.Jur., p. 1160. Doubtless the Legislature here considered the restriction of sec. 5 as necessarily incident to any effective regulation of the use of personal insurance in connection with small loans. Again, it is not for the courts to speculate upon or question its expediency.

■ The commission derived from sale of this additional insurance being deemed an interest charge, under Art. 4764c, a usurious contract would result if more than 50% thereof has been retained by the lender. This we do not know. However, a reversal does not necessarily follow, because of another factor apparent on face of the record, of which we must take notice. By stipulation the interest charged on the loan in question was $10.77, or at a rate slightly more than 5%. The note expressly required payment of interest "from date at the rate of 10 percent," and although the quoted provision of interest is not included in appellee Ware's cross-action, the contract is ipso facto usurious without reference to credit insurance or the limitations of Art. 4764c. Thus, on a ground other than assigned by the trial court, recovery under the cross-action must be restricted to $200,— principal of the loan—plus the premium charges of $17.10 validly exacted for credit insurance.

The judgment is reformed and affirmed in accordance, cost of appeal to be taxed against appellee Ware.