The International Building and Loan Association v. Thomas H. Abbott.

No. 8289.

1. **Usury.**—See facts, consisting of dealings by a shareholder with a building association, of which he was a member, which show that the loan, the matter in controversy, by the association to the shareholder was not usurious.

2. **By-Laws of Corporation.**—In a loan made by the building association to one of its shareholders reference is made to the by-laws of the association for the terms of payment of the loan. *Held*, in such case the by-laws control so far as applicable, and such application in the facts of this case negatives usury. In no case is over 12 per cent for the use of the money stipulated.

3. **Payments Upon Stock by Stockholder.**—Where a shareholder, by the terms of his subscription to stock in the corporation of which he is a member, is required to pay and does pay regular installments upon his stock, such payments should not be applied as interest for a loan made to him from the corporation.

Appeal from Bexar. Tried below before Hon. W. W. King.

*William Aubrey* and *B. L. Aycock*, for appellant.— 1. A contract for the use of money under which not exceeding 12 per cent per annum is agreed to be paid for such use, is not usurious. Jackson v. Cassidy, 68 Texas, 287; Building Assn. v. Robinson, 78 Texas, 163; Building Assn. v. Lane, 81 Texas, 369; Endl. on Build. Assns., secs. 326–336; 2 Am. and Eng. Encyc. of Law, 618–632; Gilder v. Hearne, 79 Texas, 120; Tyler on Usury, ch. 17.

2. Payment of stock dues should not be applied to the extinguishment of the borrower's indebtedness, more particularly when the stock itself is pledged. Endl. on Build. Assns., sec. 371; Delano v. Wild, 6 Allen (Mass.), 1; 2 Am. and Eng. Encyc. of Law, 623, note 6; Build. Assn. v. Lane, 81 Texas, 369.

*Upson & Bergstrom,* for appellee.—All sums of money paid or agreed to be paid to the lender for use of the money loaned, whether denominated interest, premium, or otherwise, amounting to more than 12 per cent per annum on the sums of money actually loaned, is usurious, and the lender under such a contract forfeits all right to demand or collect any interest on such contract. Build. Assn. v. Lane, 81 Texas, 369; Jackson v. Cassidy, 68 Texas, 287; Build. Assn. v. Robinson, 78 Texas, 163.

HENRY, Associate Justice.—This cause was tried by the judge without a jury, and the following conclusions of law and fact were filed:

" In the above styled and numbered cause I find the following as my conclusions of fact:

" 1. That on April 12, 1886, the plaintiff, Thomas H. Abbott, applied to the defendant for a loan of $1440; that the said loan was granted on condition that the said plaintiff would become a subscriber to and purchaser of thirteen shares of the capital stock in defendant's company, and that he should pay on said stock the sum of $1 per share per month, and that when said shares, that is to say the amount paid in thereon, together with the dividend or profit earned by said stock, should become of the actual cash value of $2600, that then the said stock should be delivered up to the defendant and cancelled, in consideration whereof the said loan of $1440 should also be cancelled, and should pay in addition thereto interest on said sum of $2600 at the rate of 6 per cent per annum, and to secure said loan should execute a deed of trust upon the property in controversy.

" 2. That at the time of making said loan plaintiff held in defendant's association five shares of the first series of said capital stock, and at the time of making said loan subscribed for two additional shares in the first series, and six shares in the fifth series of said capital stock, making a total of thirteen shares, of the par value of $200 each, and received from defendant the sum of $1440, and executed the note and deed of trust as set out in plaintiff's petition and defendant's answer, to-wit:

" $2600.                    San Antonio, Texas, April 12, 1886.

" On or before the maturity of the first and fifth series of the stock of the International Building and Loan Association, we, or either of us, promise to pay to the order of said building and loan association, at its prin-

cipal office, in San Antonio, Texas, the sum of $2600, with interest at the rate of 6 per cent per annum from the date thereof until paid; also the further sum of $26 per month from this date until the maturity of the aforesaid stock, as provided for in the by-laws of said association, which by-laws are made and taken to be a part of this note.

"That defendants' by-laws provided, that whenever it shall appear upon the books of the association that the stock of any particular series is worth $200 per share, all arrears for monthly dues, fines, and otherwise shall become at once due, and the directors shall cause to be paid to the holder of each share in such series the sum of $200, less all arrears of fines, dues, or otherwise, and payment of dues on the stock of the said series shall cease thereafter, and the directors shall cause to be delivered to each borrower in such series, who has complied with the conditions of his loan, a deed of release, and shall cancel and deliver up such loan, and thereupon the stock of such series shall be cancelled; also that each and every stockholder of each and every share of stock held by him shall pay into the treasury in lawful money $1 per month on each share, until such shares of the series of stock upon which such monthly payments are paid shall reach the value of $200, when the holder of such share shall be paid for each share of such stock the sum of $200, and thereupon such share of stock shall revert to the corporation and be cancelled.

"3. That thereafter plaintiff paid the defendant as interest on said sum of $2600, at 6 per cent per annum, the sum of $715, and had paid in as monthly dues on said shares of stock the sum of $923.

"4. The said loan, and the provisions thereof providing for the manner of its payment, was simply a device to enable defendant to demand for the use of said money an usurious rate of interest.

"5. That the first series of stock has matured, and all stockholders whose shares of stock were not pledged to the association have been paid by the association the sum of $200 each.

"Therefore I find as my conclusions of law the following:

"That the contract of loan was usurious, and provided for payment of interest amounting to more than 12 per cent per annum; therefore said contract is usurious and ought to be cancelled, and all payments made thereon, whether as interest or on account of stock subscriptions, should be credited upon the principal of said loan, and, when credited, amounting to more than the original principal of said loan, the same ought to be cancelled, and the injunction issued herein, enjoining defendants from enforcing the deed of trust given to secure the payment of said loan, ought to be perpetuated."

The conclusions of fact do not embrace all of the material evidence, nor relate to all of the issues made by the pleadings.

The appellant assigns the following errors:

"1. The court erred in finding as a conclusion of fact, that the shares

of stock held by plaintiff in defendant's association had matured, and that the shareholders not in default holding such shares had been paid each the sum of $200 as the value of such shares, the evidence showing only $135.50 paid to such holders.

"2. The court erred in finding as a conclusion of law, that the contract in suit between plaintiff and defendant in this case was usurious, in providing for the payment of interest thereupon amounting to more than 12 per cent per annum, when the facts show that not so much as 12 per cent was charged or collected.

"3. The court erred in finding as a conclusion of law, that all payments made by plaintiff upon the contract between said plantiff and defendant, whether made for account of interest or for stock subscriptions, should be credited on the principal of the loan made by defendant to plaintiff, and that such sums so paid amount to more than the original principal of said loan, because the said payments could only properly apply as made and intended to be applied as the parties to the contract agreed, that is to say, to the extinguishment of the loan and the payment of stock dues respectively.

"4. The court erred in rendering judgment for plaintiff herein, for this: that the evidence disclosed that plaintiff was justly indebted to defendant in a large sum of money, secured by the lien of a deed of trust upon the property described in plaintiff's petition herein."

The undisputed evidence was, that while according to the by-laws the withdrawal value of all shares was, when they matured, $200 each, yet the withdrawal value of plaintiff's shares was only $133.50 each.

The explanation given by the only witness who testified upon the issue was, that "all the holders of shares of that series not in default desired to withdraw before the regular maturity of the shares, and requested the association to permit to be withdrawn and have cancelled their shares in that series, by fixing the withdrawal value upon the basis of the amounts paid in by them on the shares owned by them, and the profits realized upon the same up to June, 1891. The association consented to this arrangement, and the withdrawal value was fixed by agreement at $133.50 for each share."

We can see no good reason why this agreement should not be executed. If there exists any just cause why it should not be as applicable to the the appellee as it is to other stockholders, it was not made to so appear in the record before us.

The evidence shows that one section of the by-laws reads as follows:

"Section 13. Should any borrower desire to repay to the association the money advanced, in order to redeem his shares, he shall repay to the association the money actually received, and one-eighth of the premium for which such loan was made for each year or fractional part thereof such borrower has had the use of the money."

It will be seen by reference to the "note" copied into the judge's findings that the by-laws of the corporation were "made a part of the note."

In the case of Hensel against the same corporation, we have at this term decided, that this by-law controlled as to the amount of money, principal and interest, that was to be paid by the borrower, and evidenced the true contract between the parties.

The facts of this case differ in an important respect from the case above referred to. The amount of money received by the borrower was greater in this one, and the percentage or premium paid by him was correspondingly less, upon each share of stock.

The appellee in this case received $1440, and executed his note for $2600. Of the last amount, $1200 represented the premium to be paid by him.

Twelve per cent per annum on $1440 is $172.80. According to the by-law, one-eighth per annum of $1200 (the premium) represents what the borrower promised to pay for the use of the money. That was $150 yearly, and consequently less than 12 per cent on the sum borrowed.

In considering the question of usury, payments made for stock in the corporation should not be estimated. Such payments are not made for the use of borrowed money, but through them the shareholder acquires an interest in the property of the corporation. The shareholder is not necessarily also a borrower. If he is not one, he pays for his stock on the same terms that the borrowing stockholder does. There is no inconsistency in the double relation. If not also a borrower, the retiring stockholder withdraws the value of his stock. If he is also a borrower, he uses it to pay his debt with. Whether or not that debt is tainted with usury will depend solely upon the amount of interest contracted to be paid.

We think it is clear that the payment for stock was not a device to cover usury.

As other questions relating to the amount of recovery by the corporation for expenses attending the protection of the encumbered property, and the enforcement of the trust, were not considered by the court nor embraced by the assignments of error, we will reverse the judgment because there was error in deciding that the contract was usurious, and remand the cause.

*Reversed and remanded.*

Delivered June 10, 1892.