## WOOD et al. v. CONTINENTAL SAV. & BLDG. ASS'N.

### No. 1350—5904.

Commission of Appeals of Texas, Section B.
Feb. 1, 1933.

Edward J. Hamner and P. Edward Ponder, both of Sweetwater, for plaintiffs in error.

W. H. Flippen and John T. Gano, both of Dallas, and Douthit, Mays & Perkins, of Sweetwater, for defendant in error.

SHORT, P. J.

The plaintiffs in error in this case were the original plaintiffs in the district court. They brought an action of debt against the defendant in error under article 5073, R. S. 1925, to recover double the amount of interest paid to defendant in error by plaintiffs in error on a loan, because the contract, as alleged, was usurious. Judgment was rendered in the district court of Nolan county declaring the contract to be usurious, and the amount of this judgment was in accordance with this declaration. On appeal to the Court of Civil Appeals of the Eleventh district, that court reversed the judgment of the district court, and rendered judgment in favor of the defendant in error. An application for a writ of error was duly filed in the Supreme Court, which was granted because of the conflicts alleged therein. 33 S.W.(2d) 770, 772. The following statement of the case is taken from the application:

"Plaintiffs in error applied to R. W. Thompson to procure a loan to pay for erecting a brick building on a lot owned by plaintiffs in error, giving the property as security for the loan. R. W. Thompson was the agent of defendant in error. On examination of title and desirability of the loan, defendant, through its vice-president, notified plaintiffs in error, giving the number of the loan, and that payments on their *real estate loan* were due and payable on the 5th of the month of $94.80 each, and directions would be made in the pass book issued to remit to the association direct or to Kendrick-Thompson Agency, *its regular appointed collector.* The plaintiff in error, who consummated the loan, signed the application, notes and deed of trust, etc., without reading same, depending on the reliability of Mr. Thompson, and believing that he was simply borrowing $6,000.00, payable in monthly interest installments of $94.80, each, and did not intend to subscribe to any stock, or purchase any stock, and did not know he had done so, and no stock was ever issued to him, and he was never notified of any stockholder's meeting, nor never paid any dividends on his stock, though small amounts were credited on his account, of which he knew nothing. After twenty-two months, plaintiffs in error gave the required notice and paid up said loan. The court found that plaintiffs in error paid as interest on this loan of $6,000.00, from July 1926, to February 19, 1928, twenty payments of $94.80 each, a total of $1,896.00; that on April 9, 1928, they paid additional amount of $135.38, and additional $6.00 on the draft drawn as interest, for delay in not paying same promptly—a total interest payment of $2,037.38. The draft drawn from the balance due was $5,512.70, which credited as the interest payments $487.30 on the $6,000.00 loan. Deducting this credit of the interest payments from the loan, left a balance due of the amount of the draft and made a payment of $1,550.08 as interest paid on the $6,000.00 loan for twenty-two months. Whereas, full ten per cent interest from June 5, 1926, to April 9, 1928, on the entire loan, was only $1,106.66, which was $443.42, in excess of legal interest. The defendant in error applied $135.00 on this amount to the payment of the commission to their agent Thompson and $135.00 to the President for the expense of handling the loan, which they denominated membership dues.

"The District Judge held that the transaction was a device and scheme to cover up usury and that the entire transaction was one transaction.

"The contract provided that if the pay-

ments were not made monthly, additional interest at ten per cent would be charged on them for the time deferred and it also provided that if the taxes were not paid and the property was not kept insured that the loan company could pay same and plaintiffs in error would have to pay a fine of one per cent per month on these amounts, which amounts shall become a part of the debt secured and which additional debt would bear interest at ten per cent per annum until paid. Plaintiff in error Wood was told by Thompson that there would be no brokerage on the loan, but the defendant in error would pay him his fees. Nothing was ever said to plaintiffs in error about deducting these fees or membership dues from his interest payments."

The plaintiffs in error, among other things, claim that the judgment of the Court of Civil Appeals in this case is in conflict with the decision of the Supreme Court in the case of Shropshire v. Commerce Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 283, 39 S.W.(2d) 11; Deming Investment Co. v. Giddens, 120 Tex. 9, 30 S. W.(2d) 287; Galveston & H. Investment Company v. Grymes, 94 Tex. 613, 63 S. W. 860, 64 S. W. 778; International Bldg. & Loan Association v. Beiring, 86 Tex. 476, 25 S. W. 622, 26 S. W. 39; Abbott v. Loan Association, 86 Tex. 467, 25 S. W. 620; Jackson v. Cassidy, 68 Tex. 287, 4 S. W. 541; El Paso Building & Loan Association v. Lane, 81 Tex. 369, 17 S. W. 77, and Bexar Bldg. & Loan Association v. Robinson, 78 Tex. 163, 14 S. W. 227, 9 L. R. A. 292, 22 Am. St. Rep. 36, and from the opinion of the Commission of Appeals, adopted by the Supreme Court, in the case of McDaniel v. Orr, 30 S.W.(2d) 489.

■ The theory of the plaintiffs in error, upon which they base their right to recover the amount they did in the district court, is to the effect that they merely borrowed from the defendant in error $6,000, and that the defendant in error charged them more than 10 per cent. per annum interest from the time they received the money until they paid it back, in consequence of which the defendant in error became liable to pay them double the amount of the interest collected. R. S. 1925, arts. 5069–5073. The findings of fact by the trial judge tend to support this theory. The Court of Civil Appeals did not controvert the findings of fact by the trial judge, but construed article 5069, R. S. 1925, in such a way that under the contract made between the parties, and the undisputed facts, the amounts charged by the defendant in error did not exceed 10 per cent. interest per annum. In that article "interest" is defined as "the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money."

An inspection of the statement of facts in this case demonstrates the fact to be that, while the plaintiffs in error paid $94.80 each month to the defendant in error, only $49.80 of said amount was collected as interest, the remaining $45 collected being credited as part payment on 90 shares of stock which the plaintiffs in error agreed to buy at the time they agreed to accept the loan of the money, except the first six payments were applied as hereafter stated. The Court of Civil Appeals, among other things, said: "It is undisputed that no part of the first six monthly payments was applied as dues upon the stock subscription; $49.80 of each installment was applied as interest, leaving a balance on each of $45. This amount of $45 was by the association deducted from each of the first three payments, and was paid by it through its general manager to Kendrick-Thompson Agency as a commission or brokerage fee for negotiating the loan, making the amount paid said agency for its services $135. A like amount was paid from the next three monthly installments as membership fees." After making this statement of fact, the Court of Civil Appeals, in its opinion, then proceeds to state the following: "Only two questions of law are thus presented: First, shall the sum of $135 paid to Kendrick-Thompson Agency be excluded in determining the amount of interest paid? And, second, shall the amount of $135 paid as membership fees be likewise excluded?" The Court of Civil Appeals then proceeds to demonstrate that under the definition of interest, as defined in article 5069, according to the undisputed facts, neither of these sums could be included as interest, and that under the undisputed facts the defendant in error did not collect from the plaintiffs in error, as interest, an amount in excess of 10 per cent. per annum. We have carefully examined the opinions in the cases cited in the application, wherein it is alleged that the opinion of the Court of Civil Appeals in this case is in conflict, and we have reached the conclusion that no such conflict exists. Furthermore, we have reached the conclusion that the opinion of the Court of Civil Appeals in this case is correct, and that the plaintiffs in error were not entitled to recover from the defendant in error any sum of money paid by them to the defendant in error, as interest, because of the claim that the demand was usurious. We accordingly think all the assignments of error should be overruled.

An inspection of the second amended petition of the plaintiffs in error shows that they do not assail the integrity of the written instrument executed by the plaintiffs in error, by the terms of which the defendant in error loaned the plaintiffs in error $6,000, and the latter purchased from the former 90 shares of stock in the association, and agreed to pay certain membership fees, as well as to make certain payments of stock monthly, and also to make certain payments monthly on the loan. The contract was signed voluntarily by one of the plaintiffs in error, acting for

both, and he gave no excuse for not reading it. Neither does he say he executed it by mistake or accident, or that he was led to execute it by some false representations made by some one upon whom he had a right to rely. In other words, there is no allegation in the plaintiffs' petition that the contract was executed through fraud, accident, or mistake. An inspection of the statement of facts shows that the contract was the usual one contemplated to be made by virtue of the provisions of title 24, articles 852–881, R. S. 1925, authorizing the organization and operation of building and loan associations. It may be that in fact this particular transaction was usurious, but the record in this case shows that it was not. It is true that the testimony of the plaintiffs in error, considered alone and assumed to be true, demonstrates beyond the peradventure of a doubt that they did not intend to purchase any stock in this association, and that they did not intend to pay any commission fees, and that they did not intend to become obligated to pay any membership fees in the association, and also that they did not agree to pay any broker's fee, but, when we examine their pleadings, we find no basis upon which to rest this testimony. They merely allege that the scheme by which the defendant in error was enabled to collect the amount of money it did collect from them was a device to charge usurious interest. But the testimony shows that this scheme was one expressly authorized by the statutes of the state, and therefore could not legally have been a usurious one, in the absence of allegations and proof to the effect that by some fraudulent act on the part of defendant in error, or its authorized agent, or some accident or mistake on the part of the plaintiffs in error, who executed the instrument, the execution of the same was procured to the detriment of the person executing it, so as to render the act, apparently legal, an illegal one.

■ According to the undisputed facts of this case, the plaintiffs in error occupied the dual relation to the defendant in error, of a shareholder, and a borrower, and, according to the law governing building and loan associations, a person could be either one or both, that is to say, a person could be merely an owner of shares in the association, or he could be an owner of shares and also a borrower of money. In the latter event, the person so owning the shares, and so borrowing the money, occupied two positions: One, the position of an owner of shares of stock in the association, and the other a borrower of funds from the association, which belonged to it. It appears from the record in this case that according to the by-laws of the association, which the plaintiffs in error agreed to be bound by, no person borrowing money from the association could do so without becoming the owner of shares of stock to be paid for in the future, and also by becoming

liable to pay certain membership fees. Where a person contracts to borrow money from a building and loan association, and at the same time agrees to purchase certain shares of stock, at certain prices, to be handled by the lender, until the money borrowed has been repaid, it cannot be said that the building and loan association, in agreeing to loan the money, and to sell the shares of stock, violates any law, and especially the law relating to usurious interest. The two items, that is to say, the monthly installment of interest, and the monthly payment upon the amount due for the shares of stock, are separate and distinct ones, and the transaction is one directly authorized by the law governing building and loan associations. Articles 852–881, R. S. 1925, and amendments thereto (Vernon's Ann. Civ. St. art. 881a—1 et seq.).

In Prudential Building & Loan Association v. Shaw, 119 Tex. 228, 26 S.W.(2d) 168, 27 S.W. (2d) 157, which was a mandamus case, wherein the opinion of Section A of the Commission of Appeals was adopted and the mandamus awarded by the Supreme Court, Judge Critz, speaking for that section of the Commission, in paragraph 10, pages 172 and 173 of 26 S.W. (2d), 119 Tex. 228, discusses the application of the law relating to building and loan associations to borrowing and nonborrowing shareholders, and in speaking of the latter he said in that case: "The general rule is that a borrowing shareholder occupies a dual relationship to the association. 'As a stockholder he is a member of, and, in theory at least, participates in the management of the corporation. In that capacity he shares in the expenses of the business, the losses, and profits, just as would a stockholder of any other corporation.' "

In supporting this declaration, Judge Critz cites the following authorities:

"Groover v. Pacific Coast Savings Soc., 164 Cal. 67, 127 P. 495, Ann. Cas. 1914B, 1261, 43 L. R. A. (N. S.) 874, and notes; Smith v. Bath Loan & Building Association, 126 Me. 59, 136 A. 284, 50 A. L. R. 526, and annotations 533 et seq. * * *

"Price v. Kendall, 14 Tex. Civ. App. 26, 36 S. W. 810, 811 (Writ Ref.); Leary v. People's Building, Loan & Savings Ass'n, 93 Tex. 1, 49 S. W. 632, 51 S. W. 836; Interstate, etc., v. Goforth, 94 Tex. 259, 59 S. W. 871, 874; Building & Loan Ass'n v. Logan, 33 S. W. 1088, 1090 (Tex. Civ. App. Writ Ref.); Sweeney v. El Paso, etc., 26 S. W. 290 (Tex. Civ. App. Writ Ref.); Blakeley v. El Paso, etc., 26 S. W. 292 (Tex. Civ. App. Writ Ref.); Pioneer Building, etc., v. Everheart, 18 Tex. Civ. App. 192, 44 S. W. 885 (Tex. Civ. App. Writ Ref.); Building & Loan Association v. Griffin, 90 Tex. 480, 39 S. W. 656.

"In the Price Case, supra, it is shown that the stockholder borrowed money from the association. In the same transaction he also

bought stock, paying therefor in installments. It was contemplated that when the stock by payments and dividends reached its par value it would be applied to the payment and liquidation of the loan. Payments were regularly made and applied first to the interest on the loan and the balance on the purchase price of the stock. Before maturity the association became insolvent and its affairs were placed in the hands of a receiver. The borrowing shareholder then demanded that the amount of his payment theretofore applied to dues upon his stock be credited on the principal of his loan. We quote the following from the opinion of Judge Garrett from the Court of Civil Appeals in passing upon the case: 'Should the payments of dues or assessments made upon the shares of stock be regarded as payments in extinguishment of the debt? Some time before payments of dues upon the shares belonging to Sawyers ceased, it was discovered that the stock of the association, by reason of losses, was not worth the amount of dues that had been paid thereon, and in a sense the association had become insolvent, since it was not able to redeem its shares at the cancellation price, or by a return of all dues paid thereon. In winding up the affairs of the association the nonborrowing shareholders must perforce accept a pro rata distribution of the assets of the corporation upon their shares, whether they are sufficient to return all dues or not; and, unless the dues of borrowing shareholders are to be treated as payments upon their obligations, there can be no reason why they should not share the losses of the association equally with the other shareholders. By the plan of the association, the borrowing member receives the par value of his stock in advance, and obligates himself to mature it by the payment of assessments, and when it becomes mature, if his obligation has not been sooner discharged, his stock is then canceled and his obligation discharged; but the stock never becomes matured until it is worth par value. Thus it will be seen that there is a plain distinction between the stock and the debt. The language of Judge Henry in the case of Association v. Abbott, 85 Tex. 224, 20 S. W. 118, regarding the payment of dues, although in discussion of the question of usury, is appropriate here: "Such payments are not for the use of borrowed money, but through them the shareholder acquires an interest in the property of the corporation. The shareholder is not necessarily also a borrower. If he is not one, he pays for his stock on the same terms that the borrowing stockholder does. There is no inconsistency in the double relation. If not also a borrower, the retiring stockholder withdraws the value of his stock. If he is also a borrower, he uses it to pay his debt with." There is no reason why the borrowing stockholder should be placed in any

better attitude than those who are not, when the association has failed to carry out its undertaking, and ceased efforts to mature the stock. The default of the association is the default of all of the shareholders, whether they be borrowers or nonborrowers, and all losses that impair the value of the stock should be applied equally to every share. McGrath v. Association, 44 Pa. 383; Strohen v. Association, 115 Pa. 273, 8 A. 843; Towle v. Society (C. C.) 61 F. 446; Rogers v. Hargo, 92 Tenn. 35, 20 S. W. 430. There is authority for the opposite doctrine, but the weight of authority as well as of reason is with the cases above cited and others in line therewith. Authority contra: Buist v. Bryan, 44 S. C. 121, 21 S. E. 537 (29 L. R. A. 127, 51 Am. St. Rep. 787).'

"In the Leary Case, supra, the Supreme Court, speaking through Judge Brown, held that the association was entitled to collect its debts from a borrowing stockholder, less the *actual value* (italics ours) of the stock at the time of sale under a deed of trust. These words are very significant, as Judge Brown clearly intended thereby to say that a borrowing shareholder was only entitled, under the facts of that case, to credit on the loan to the extent of the actual value of the stock. There are other questions decided in the Leary Case which are not pertinent here.

"The Goforth Case, supra, is not directly in point, but we cite it for the reason that we think the opinion recognizes the dual relation of a borrowing shareholder. This is shown by the statement in the opinion that, 'The payments monthly of premiums upon the shares of stock, amounting to $5.04 on each share per month, did not, under the terms of the contract, constitute a present payment on the debt,' etc.

"The Logan Case also is not directly in point. We cite it also to show that it recognizes the dual relation of a borrowing shareholder. In this opinion it is stated: 'That he wanted a loan, and took the stock in order to get the loan, would make no difference in the fact that he became a stockholder, and assumed the obligations of such.'

"We think that the Sweeney, Blakeley, Everheart, and Griffin Cases, supra, all show that our courts have recognized the dual relationship of a borrowing shareholder in a building and loan association."

To the same effect is the opinion in the case of Cocke and wife v. Wright, 39 S.W.(2d) 590, wherein the writer, as a member of Section B of the Commission of Appeals, lays down the same doctrine, that a borrowing member of a building and loan association occupies the dual relation thereto, but that the terms of the contract by which a person becomes a borrower is wholly distinct and separate from the terms of the contract by which a borrower also becomes a purchaser of shares

of stock of the association. The doctrine, which is known as the Pennsylvania doctrine, discussed in Prudential Building & Loan Association v. Shaw, supra, is announced in Strohen v. Franklin Savings Fund & Loan Association, 115 Pa. 273, 8 A. 843, 844, wherein the dual relationship of a borrowing member of an association is recognized by the use of the following language: "The insolvency of the company, as before observed, puts an end to its operation as a building association. To a certain extent it also ends the contract between it and its members respectively, and nothing remains but to wind it up in such a manner as to do equity to creditors and between the members themselves. As regards the latter, care should be taken to adjust the burdens equally, and not to throw upon either borrower or non-borrowers more than their respective share. That result may be reached by requiring the borrower to repay what he actually received, with interest. He would then be entitled, after the debts * * * are paid, to a pro rata dividend with the non-borrower for what he had paid upon his stock [or contracts]. He will thus be obliged to bear his proper share of the losses. To allow him to credit upon his mortgage his payments on his stock would enable him to escape responsibility for his share of the losses, and throw them wholly upon the non-borrowers. In other words, the borrower would escape without loss. It will not do to administer the affairs of an insolvent corporation in this manner."

It is true that this language is not directly applicable to the facts of this case, but we quote it for the purpose of showing that a contract to borrow from a building and loan association is one thing and the contract to purchase shares of stock from the association is another. The opinion of the Court of Civil Appeals in this case is based, in part, upon the construction of the word "contract" as used in article 5069, R. S. 1925, and its findings of fact, which are uncontroverted, to the effect that under the terms of the contract, as made by the parties, there was no agreement on the part of the plaintiffs in error to pay more than 10 per cent. "for the use or forbearance or detention of money," and, as the suit of the plaintiffs in error was exclusively based upon a claim that this contract obligated the plaintiffs in error to pay more than 10 per cent. per annum as interest upon the money borrowed, it could not be sustained. Though the Court of Civil Appeals held correctly that the judgment rendered in the lower court, in favor of the plaintiffs in error, should be reversed, and as the testimony under the pleadings was uncontradicted, that no more than 10 per cent. was charged as interest, it also correctly held that judgment should be rendered for the defendant in error.

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.