STATE of Texas

v.

COMMUNITY FINANCE & THRIFT CORPORATION.

No. 10740.

Court of Civil Appeals of Texas.

Austin.

April 6, 1960.

Rehearing Denied April 27, 1960.

Will Wilson, Atty. Gen., Fred B. Werkenthin and R. V. Loftin, Jr., Asst. Attys. Gen., for appellant.

Joseph H. Louis, Wilmington, Delaware, McGown, Godfrey, Logan & Decker, John B. McClane, Fort Worth, for appellee.

GRAY, Justice.

The State of Texas, through the Attorney General acting under Art. 4646b, Vernon's Ann.Civ.St., brought this suit against Community Finance and Thrift Corporation and alleged that the defendant corporation was engaged in the business of habitually loaning money and charging usurious interest therefor. A permanent injunction restraining the defendant corporation from collecting, contracting for or attempting to collect usurious interest was prayed for.

A nonjury trial was had, a judgment was rendered denying any relief to the State and it has appealed.

At the trial the parties stipulated among other things that appellee is a Texas corporation engaged in the business of habitual'y loaning money to borrowers and that:

"5. Defendant makes no loans except certificate plan type loans. Defendant makes only those loans authorized under Articles 1524a–1, and regulated by Articles 1303b and 1524a. Consequently, borrowers must purchase a certificate and conform to the loan plan in use by Defendant in order to borrow money from it.

"6. That under Defendant's plan of operation in effecting certificate plan type loans. Defendant takes from the borrower a term note due at a date

certain in the future on which no part of the principal and interest is required to be paid until its maturity. In computing the face amount of the note, interest in a sum equal to 10% per annum of the amount loaned is added to the amount loaned. As a condition to obtaining the loan, the borrower must, contemporaneously with the execution of the term note, subscribe to an Installment Class B Investment Certificate, the face amount of which at maturity equals the face amount of the note. * * * The borrower is obligated by the terms of the Class B Investment Certificate to make substantially uniform monthly payments in such amounts that the total paid on the Class B Investment Certificate will exactly equal the face amount of the note on the due date of the note, save and except the moneys required to be paid on the Class B Investment Certificate draw interest from the date of each payment and the earned interest when added to the certificate would exceed the amount of the note. As a further condition of obtaining the loan, the borrower is required contemporaneously with obtaining the loan to pledge or assign said Class B Investment Certificate to the Defendant as additional security for the debt. The interest charged at the rate of 10% per annum is computed on the basis that the amount advanced by the Defendant, on the certificate plan type loan, remains outstanding until the due date of the above described term note.

* * * * * *

"8. That Class B Investment Certificates are not issued by Defendant independent of a loan transaction and all of the Class B Investment Certificates issued by Defendant at the time of the suit were issued by Defendant solely in connection with a loan. * * *

* * * * * *

"10. That no Class B Investment Certificate remains outstanding beyond the time the borrower's liability on the corresponding term note expires though the borrower has the right, should he elect to do so, to pay his loan with other funds and convert his installment certificate into a fully paid certificate and leave the funds with the Defendant where same would draw 3% interest. Under the plan of Defendant, when Installment Class B Certificates are fully paid they may be converted to the Class A type certificates sold by the Defendant and denominated 'fully paid' certificates. A true copy of a Class A Certificate is attached hereto, * * *. Neither party stipulates as to the truth of the matters contained therein.

* * * * * *

"13. That during the time a certificate plan loan is outstanding the Class B Investment Certificate is retained in the possession of the Defendant, and the borrower never obtains possession of such certificate even after the transaction is completed.

* * * * * *

"25. That the rate of interest on each of the loan transactions entered into by Defendant under Defendant's plan of operation, including those shown in Exhibit 'E', would exceed 10% per annum if it were considered that the monthly payments required by the investment certificate were applied to the note at the time of payment."

Class B Certificates provide:

"This Certificate is an instalment Investment Certificate and the undersigned subscriber promises to pay to the Corporation at it _ issuing office the full face amount of this Certificate in successive monthly instalments in the amount and on the dates set forth above, with final payment on the date specified above.

"This Certificate shall mature on the date the final payment is due.

"The Corporation will pay to the owner of this Certificate interest at the rate of one and one-half per cent (1½%) per annum on the aggregate amount paid on the Certificate.

"Upon the maturity of this Certificate, the Corporation will pay to the owner thereof upon surrender of this Certificate at its office the full amount paid to the Corporation upon the Certificate, plus any interest accrued and unpaid thereon under the terms thereof.

"When fully paid for this Certificate, at the maturity thereof, may at the option of the owner be surrendered to the Corporation in exchange for a Class A Investment Certificate of the Corporation in a like amount and bearing interest at the rate of three per cent (3%) per annum."

Class A Certificates provide that the corporation shall have the right to redeem the same at any time after thirty days' notice in writing of such intention to redeem and that interest shall cease to accrue thirty days after the date of such notice.

Appellee says that its acts are within the provisions of Art. 1524a–1, Vernon's Ann. Civ.St., and that all loans made by it are authorized by that statute. Section 1 of the statute authorizes qualified corporations:

"(a) To lend money and to deduct interest therefor in advance at a rate not to exceed ten (10%) per cent per annum, and in addition to require and receive uniform weekly or monthly installments on its certificates of indebtedness purchased by the borrower simultaneously with the loan transaction, or otherwise, and as a condition to said loan, and pledged with the lender as security for said loan;

"(b) To issue and sell certificates of investment, either fully paid or on the installment plan;

"(c) The making of said loan and the sale of said investment certificate, though done at the same time and as a condition to the granting of the loan, shall nevertheless be considered as two separate and distinct transactions. The periodic payments required on the installment investment certificates, hypothecated as security for the loan, shall not be considered as a periodic repayment of the loan; and payments, when, as, and if received, shall be applied as a credit to the installment investment certificate and shall not be applied as a credit upon the loan;"

The statute also provides that:

"Sec. 2. The issuance and sale of certificates of investment in the transaction of the business of corporations organized hereunder shall not be construed to be borrowed money. * * *

"Sec. 3(a) The provisions of this Act shall be strictly construed, and it is hereby declared to be the intention of the Legislature that nothing herein shall repeal, alter or amend any of the provisions of the existing laws relating to usurious interest."

The question presented for our decision here is not what the statute authorizes but it is: Do the facts before us show that appellee's loan transactions violate the usury laws of Texas? In answering this question we will give due consideration to Sections 1(c) and 2, supra.

Section 3(a), supra, is evidence that the Legislature did not intend to evade the constitutional and statutory laws prohibiting charging usurious interest by providing a means or method for such evasions. Any other construction of the Act would render the entire Act unconstitutional. Section 11 of Art. 16, Texas Constitution, Vernon's Ann.St., provides that all contracts for a greater rate of interest than ten per cent per annum shall be deemed usurious. Arts. 5069 and 5071, Vernon's Ann.Civ.St., provide respectively that: Interest is compen-

sation "for the use or forbearance or detention of money," and all written contracts which may in any way, directly or indirectly, provide for a greater rate of interest than 10 per cent per annum shall be void and of no effect for the amount or value of the interest. Thus it appears that the Legislature intended by the Act to authorize qualified corporations to lend money and charge a lawful rate of interest therefor. Sec. 1(a), supra, provides that interest shall not exceed 10 per cent per annum. This of course does not mean that the usury laws have not been violated.

■ At the State's request the trial court filed findings of fact and conclusions of law. The State excepted to such findings and conclusions and requested additional findings and conclusions. This request was refused.

Among other things the trial court found:

"1. A number of the undisputed facts in the case were stipulated by the Plaintiff and Defendant. The stipulation is of record in the cause. I hereby adopt the Findings of Fact as stipulated as part of the Findings of Fact here.

" * * * At the time of the execution of the note, the borrower must subscribe for an Installment Class B Investment Certificate, the face amount of which at maturity equals the face amount of the note except as to earned interest. When earned interest is added to the face of the Certificate at maturity it exceeds the amount of the note by the amount of the earned interest. * * *."

Among other things the trial court concluded:

"4. The provision of Article 1524a–1, Subsection c, R.C.S., providing that the making of the loan and the sale of the Investment Certificate although done at the same time shall be considered as two separate and distinct transactions and the provisions that the periodic payments required on the Installment Investment Certificate shall not be considered as a periodic repayment of the loan create presumptions only in favor of the quality of the transaction and are subject to rebuttal by evidence establishing the contrary.

"5. The burden of establishing a contrary presumption is with the Plaintiff.

"6. The Plaintiff has failed to overcome such burden.

"7. The plan of lending authorized by Article 1524a–1, R.C.S., is no different from the plan of lending authorized for building and loan associations in Articles 881a–36, Subsections A, B, C and D, and Section 2 of Article 881a–37, R.C.S., nor is same any different from that authorized for banks in Article 342–506, R.C.S., of the Banking Code of 1943."

Conclusion 6, supra, is not supported by the findings of fact. The stipulations of the parties were adopted as findings of fact and as undisputed facts. The parties stipulated that "as a condition to obtaining the loan" the borrower "must" subscribe to a Class B Investment Certificate. The conclusion then is contrary to what the Supreme Court said in Mays v. Pierce, 154 Tex. 487, 489, 281 S.W.2d 79, 82. There the Court said:

"It is contended that the payment by Pierce to Wayland College of the sum of $1,000, which sum was included in the total amount of $11,000 for which Pierce executed his note to Mays, constituted usury. This would be true had the payment to Wayland College been demanded of Pierce by Mays as a condition precedent to Mays advancing the money to Pierce. The findings of fact by the trial court were that such payment to Wayland College was *not* a condition precedent to Mays making the loan to Pierce. Therefore, such pay-

ment could not be usury under the facts of our case."

■ It is the substance rather than the form of the loan transaction that determines whether the loan was usurious. Schmid v. City Nat. Bank of Wichita Falls, 132 Tex. 115, 114 S.W.2d 854. In Temple Trust Co. v. Sewell, 133 Tex. 417, 126 S.W.2d 943, 947, the Court said:

"The courts will diligently look through the form of a transaction to discover illegal interest and protect the borrower from its consequences, but they will not be diligent to treat a carefully-planned disguise as other than what on its face it purports to be, and was intended to be, merely to save the lender from his usurious act."

■ The question presented is: Does the loan transaction involve legitimate benefits to the borrower either from third persons not sharing them with the lender or from the lender direct for some distinctly separate and additional consideration than the mere loaning of money? Independent Lumber Co. v. Gulf State Bank, Tex.Civ. App., 299 S.W. 939, er. ref.

In the case before us the borrower subscribed to a Class B Certificate as a condition to obtaining the loan. This certificate was pledged as security for the loan and at its maturity the borrower had the option to either pay the loan with it and accept the 1½ per cent interest on it or convert it into a Class A certificate earning interest at 3 per cent per annum for a period of thirty days at the option of the company— this would be 25 cents per month for each $100. On the Class B Certificate the interest would be one-half of the above amount. These amounts can hardly be termed legitimate benefits to the borrower. In fact they are so small that the de minimis doctrine should be applied to them.

Neither Certificates A nor Certificates B have a fixed par value but their values are determined solely by the amount of the loan

and the interest accrued thereon. If it be argued that Certificate B affords or is a method of saving money to pay off the note even then it cannot be said that it is a benefit not shared by the lender for the reason that the money is paid to the lender. Neither can it be said that it is a benefit from the lender for some distinctly separate and additional consideration than the mere loaning of money for the reason that the lender requires the subscription to the certificate as a condition to obtaining the loan and then retains the certificate as security for the loan. Independent Lumber Co. v. Gulf State Bank, supra. Moreover the money paid on the certificate is paid to appellee and it therefore participated "in the funds so paid." Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 1049, 109 A.L.R. 1464.

■ Art. 1303b, Vernon's Ann.Civ.St., is cited as authority for the issuance and sale of Class B Certificates. We find nothing in the provisions of that statute that controls our decision here. It authorizes corporations to be formed, without banking or insurance privileges, for the purposes, among others, of accumulating and loaning money, selling and dealing in notes, bonds and securities, acting as trustee, etc. We see no relevancy of its provisions to the question here presented.

■ We are cited to two cases as being directly in point on the question here presented. These are: Reams v. Community Finance & Thrift Corp., Tex.Civ.App., 236 S.W.2d 185, no writ history; Steiner v. Community Finance & Thrift Corp., Tex. Civ.App., 258 S.W.2d 129, er. dism. by agr. The loan transaction before the courts in the above cases was similar if not identical to the loan transaction before us and the appellee there is appellee here.

In each of the above causes the corporation recovered a judgment against the makers of a note for the amount of said note and also foreclosing its lien on a saving certificate securing the payment of said note.

In the Reams case the court stated the question for decision to be: "Whether or not the terms of the loan made by appellee to appellants were violative of the Constitutional provision inhibiting a rate of interest in excess of ten per cent per annum" [236 S.W.2d 185]. In the Steiner case the court stated the question for decision as follows:

"* * * But, since appellants' four points place in issue on this appeal only the constitutionality of Art. 1524a–1 under the assumption of the parties that appellee had fully complied with the provisions thereof, the principal issue before this court is whether or not Art. 1524a–1 violates the provisions of Sec. 11, Art. 16 of the Constitution of the State of Texas, Vernon's Ann.St., prohibiting the charging of interest in excess of 10%." [258 S.W.2d 129].

In affirming the trial court's judgment in the Reams case the court said:

"Apparently the precise question raised in this case has not been expressly passed upon by the courts of last resort in Texas, and, despite the cogent and persuasive argument made to the contrary, we regard the same as being controlled by the decisions of the Supreme Court in the building and loan cases, such as Wood v. Continental Savings & Building Association, Tex. Com.App., 56 S.W.2d 641; Hatcher v. Continental Southland Savings & Loan Association, 124 Tex. 601, 80 S.W.2d 299; and Interstate Building & Loan Association v. Goforth, 94 Tex. 259, 59 S.W. 871. No material distinction can be perceived between the building and loan plan commonly practiced in Texas and the one here under review. * * *." [236 S.W.2d 186.]

In the Steiner case the court cited and quoted from the Reams case. The court noted that in the Reams case it was said that "appellee company sold certificates to both borrowers and non-borrowers, just as

the building and loan corporation sold shares." [258 S.W.2d 131.] The court said:

"The concept here as to the constitutionality of Art. 1524a–1 is based on the principle that the Supreme Court of Texas has placed its sanction of constitutionality on this type of loan procedure under the theory that the execution of a note to a corporation and the simultaneous purchase of stock issued by the corporation as a prerequisite to obtaining such loan are two separate and distinct transactions and that the monthly payments on the stock are not payments on the loan which reduce the principal of the debt and the corresponding interest collectable thereon. Wood v. Continental Sav. & Bldg. Ass'n, Tex.Com.App., 56 S.W.2d 641; Interstate Building & Loan Ass'n v. Goforth, 94 Tex. 259, 59 S.W. 871, Syl. 5; International Bldg. & Loan Ass'n v. Abbott, 85 Tex. 220, 20 S.W. 118; Gregg v. North Texas Building & Loan Ass'n, Tex.Civ.App., 82 S.W.2d 1093."

After overruling appellant's four points the court said:

"The rulings hereinabove stated dispose of the points of error under precedents heretofore laid down by the Court of Last Resort in Texas and the discussion hereinafter does not constitute a ruling on any issue as raised by point of error but is a discussion of the pertinent issues as to the loan transaction and statute in issue as shedding light thereon. That provision of Art. 1524a–1 which declares that the making of loans and the selling of certificates of investment are two separate and distinct transactions and that periodic payments required on the certificates of investment shall not be considered as periodic payments on the loan is pure fiction. * * *

"* * * the opinion is here expressed that Art. 1524a–1 is merely a legislative provision authorizing the

charging of interest in excess of 10% and such statute should be held in violation of Sec. 11, Art. 16 of the constitution. Further the practices authorized thereby should likewise be declared in violation of the same constitutional provision. The principles here expressed are not without precedent in Texas. Cotton State Bldg. Co. v. Reily, Tex.Civ.App., 50 S.W. 961; People's Building, Loan & Savings Ass'n v. Rising, Tex.Civ.App., 34 S.W. 147 (writ refused); People's Building, Loan & Savings Ass'n v. Marston, 30 Tex.Civ.App. 100, 69 S.W. 1034 (writ refused).

"In addition to the opinion expressed hereinabove, although not raised by point of error, the following issues are discussed as they also shed further light on the loan transaction. Even though the loan transaction in issue should be within the provisions of Art. 1524a–1, usurious interest was actually charged on the loan debt. The record shows without dispute that appellants received the sum of $503 on executing the note. The record likewise shows without dispute that interest of $57 was paid on this sum for one year. 'In such case, for the purpose of testing the contract for usury, the real principle is the amount actually received by the borrower.' Adleson v. B. F. Dittmar Co., 124 Tex. 564, 80 S.W.2d 939, 940; Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204; Temple Trust Co. v. Sewell, 133 Tex. 417, 126 S.W.2d 943.

"* * * on oral argument appellee admitted that its Class B Investment Certificates, the type in issue here, could not be purchased by the general public, but were only sold to parties obtaining loans from the corporation. Art. 1524a–1 provides under Sec. 1(b) that the corporation has the power to 'issue and sell certificates of investment, either fully paid or on the installment plan'. The statute does not pro-

vide that the corporation shall sell investment certificates only to persons obtaining loans from the corporation. This issue is of particular import in view of the fact that the appellate courts, under the ruling that the making of loans and the selling of building and loan stock, or investment certificates, constitute a dual transaction, have consistently decreed the following rule as a test for determining whether such acts constitute a dual transaction, '* * * according to the law governing building and loan associations, a person could be either one or both, that is to say, a person *could be merely an owner of shares in the association,* or he could be an owner of shares and also a borrower of money.' (Emphasis added.) Wood v. Continental Savings and Building Association, supra [56 S.W.2d 643(2).] As pointed out hereinabove, in Reams v. Community Finance & Thrift Corp., supra, not only is the above rule affirmed but such rule is likewise cited as one of the principle elements distinguishing the Reams case from Security Thrift Syndicate v. Tidwell, 190 Okl. 377, 123 P.2d 955 wherein such a loan and certificate transaction was held to be usurious.

"Although the issue discussed above is not presented under appropriate point of error, the admission of appellee made on oral argument established that appellee corporation issued B certificates only to borrowers. Under such admission, the appellee was not in fact complying with all of the provisions of Art. 1524a–1 under the above test decreed by the courts of Texas as a method of ascertaining the dual nature of such loan transactions. Furthermore, as pointed out hereinabove, the loan in fact bears usurious interest when tested by the decisions of the Supreme Court of Texas.

"The issues discussed hereinabove, as stated, are not presented by point of

error, but are incorporated herein as the same not only shed light on the loan transaction but also substantiate the opinion here expressed that in the absence of precedent which is considered binding on the court, an examination of the statute and the entire transaction here in issue, impels the opinion that Art. 1524a–1 is merely a cloak under which usurious interest is charged in violation of the Constitution of the State of Texas."

Our lengthy quotation from the Steiner case shows that the court was not in accord with its holding which was based on the Reams case and the interpretation by that opinion of the so-called building and loan cases.

Before our discussion of the building and loan cases and in connection therewith we call attention to stipulation 8, supra.

We will first notice the building and loan cases cited in the Reams opinion. In the Wood case it was undisputed that Wood was a shareholder in the corporation and a borrower from it. The court noted that under the law governing building and loan associations a person could be an owner of shares or he could be an owner of such shares and also a borrower of money from the association. The facts showed that Wood and others borrowed money from the association and also purchased shares of stock. The installment payments were $94.80 each. Of this amount $49.80 was collected as interest on the loan and $45 was credited as part payment for the stock. The court said:

"* * * Where a person contracts to borrow money from a building and loan association, and at the same time agrees to purchase certain shares of stock, at certain prices, to be handled by the lender, until the money borrowed has been repaid, it cannot be said that the building and loan association, in agreeing to loan the money, and to sell the shares of stock, violates any law,

and especially the law relating to usurious interest. The two items, that is to say, the monthly installment of interest, and the monthly payment upon the amount due for the shares of stock, are separate and distinct ones, and the transaction is one directly authorized by the law governing building and loan associations. * * *." [56 S.W.2d 643.]

The court then cited and quoted from Prudential Building & Loan Ass'n v. Shaw, 119 Tex. 228, 26 S.W.2d 168, 27 S.W.2d 157 as follows:

"* * * 'The general rule is that a borrowing shareholder occupies a dual relationship to the association. "As a stockholder he is a member of, and, in theory at least, participates in the management of the corporation. In that capacity he shares in the expenses of the business, the losses, and profits, just as would a stockholder of any other corporation." ' "

In the Hatcher case Hatcher and his wife borrowed money from the association and at the same time applied for 68 shares of its stock. This stock was pledged to the association as security for the loan. The suit was for usury and the question of the sufficiency of plaintiffs' petition was before the court. The court cited the Wood case and said:

"* * * In this connection we think the contract here pleaded as usurious is in legal effect the same as the contract considered by Judge Short, speaking for Section B of the Commission, in the Wood Case, supra. The contract in the Wood Case was held free from usury. It follows that the same construction should be given to this contract." [80 S.W.2d 307.]

In Interstate Building & Loan Ass'n v. Goforth the court considered the issue of usury involved in a loan transaction including the purchase and pledge of shares of stock in the association. The court said:

" * * * There is nothing in the terms of the contract to show that this was not a fair and honest scheme on the part of the loan company, whereby it would further secure the loan made by selling to the borrower an interest in its business, to the extent of 6 shares, for the period of 96 months, and upon which, by the terms of the contract, the borrower must necessarily receive an advantage to the extent of the difference between the amount paid on the stock and the sum of $600. Ninety-six payments of $5.04 each aggregate $483.84, which, being deducted from $600, leaves $116.16, which the borrower would receive as compensation for the use by the company of the monthly-installment payments. By the terms of the contract the debt would be discharged by the maturity of the stock before the 96 payments should be made, thereby securing participation even in the uncertain gains that might be derived from the use of the money. * * *" [94 Tex. 259, 59 S.W. 874.]

The authorities make it clear that a person may be a borrower from a building and loan association and also a shareholder and, as such shareholder, share its benefits, its losses and its profits as does a stockholder in other corporations. In the Wood case, supra, the interest payments and stock payments were separate. In the case before us the borrower, as we have shown, supra, does not share in the corporation.

We recognize the Reams case as a decision deciding the question before us. However, it is our opinion that the reasoning of the opinion is contrary to the authorities cited to support the conclusion announced and for that reason we decline to follow it. The same is true of the Steiner case which opinion accepts the holding in the Reams case although that case actually decides only the constitutionality of Art. 1524a–1, supra. However, we are in general accord with the contrary statements.

In his conclusion of law No. 7, supra, the trial court cites Art. 342–506, Vernon's Ann.Civ.St. That statute simply authorizes state banks to take as security for its loans its investment certificates payable in installments. If under this statute the bank's loan transaction resulted in a usurious charge of interest then it would violate the usury laws as would any other lender of money and in such event the statute would not afford the bank a defense.

For the purpose of determining the issue of usury we have applied the well-established tests to the loan transaction before us and by such tests we have shown that said loan transaction provides for usurious interest. This being true then the application of Sec. 1(c) of Art. 1524a–1, supra, to said loan transaction makes inescapable the conclusion that said section is a legislative provision authorizing the charging of usurious interest and violates Sec. 11 of Art. 16, Texas Constitution. It is therefore our opinion that said section is unconstitutional and void. The same conclusion is compelled by testing said section by the provisions of Sec. 3(a), supra.

A strict application of the provisions of Sec. 2 of Art. 1524a–1, supra, to the loan transaction before us shows that the issuance and sale of investment certificates involve the payment of money to appellee rather than borrowing money from it. We have already determined the result of such payments.

The judgment of the trial court is reversed and this cause is remanded with instructions to permanently enjoin appellee from contracting for, collecting or attempting to collect from any borrower interest in excess of 10 per cent per annum.