B. R. HARRELL et ux., Appellants,

v.

COLONIAL FINANCE CORPORATION, Appellee.

No. 13644.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 2, 1960.

Rehearing Denied Jan. 4, 1961.

J. Bruce Aycock, Jourdanton, for appellants.

Dibrell, Gardner & Dotson, San Antonio, for appellee.

POPE, Justice.

This is a usury case. Whether credit insurance and the investment certificate plan are cloaks for usury are the two main legal points. Colonial Finance Corporation, hereafter called lender, sued B. R. Harrell and wife, Annie G. Harrell, hereafter called borrower, for non-payment of a promissory note in the face amount of $468, with interest after maturity, and for attorney's fees. The note was partially secured by a chattel mortgage and an investment certificate. After a jury trial, the court gave judgment against Harrell but not his wife, for the unpaid balance on the note, ten per cent interest after due date, and ten per cent attorney's fees, making a total of $126.26. The judgment also ordered foreclosure on household goods covered by a chattel mortgage. Borrower's pleas of usury and for double the amount of interest paid were denied, and the appeal is from that judgment.

Our decision requires a determination of the exact amount of money borrowed from Colonial. The jury found that borrower received $349.07 in cash. There was an $8 charge for inspecting the furniture, which was actually paid to an in-

spector. Recording the mortgage cost 75 cents. These were legitimate charges. Nevels v. Harris, 129 Tex. 190, 102 S.W. 2d 1046, 109 A.L.R. 1464.

■ As a condition to the loan and as further security, lender required Harrell to insure his life up to the amount of the loan, and to make Colonial the beneficiary. Lender included $49.14 in the note for the premium it advanced for this credit life insurance. Borrower claims this was usurious interest and attacks Section 6, Article 3.53, Insurance Code, V.A.T.S., which states that such premiums, when they do not exceed the maximum rates promulgated by the Board of Insurance Commissioners, shall be deemed commissions and not interest. The validity of such a charge is not a new question, but has been approved after full discussion in Hatridge v. Home Life & Accident Ins. Co., Tex.Civ.App., 246 S. W.2d 666, and Rodriguez v. R. P. Youngberg Finance, Tex.Civ.App., 241 S.W.2d 815.

Lender was the agent for the insurer and as such earned a commission in an undetermined amount on the policy. Whether or not the Legislature had provided in Section 6, that such compensation was a commission and not interest, so long as insurance was required as a reasonable protection to the lender, it was not interest. Such a rule is criticized in XII Southwestern Law Journal, 139, because of the disparity between premiums charged by insurers and losses paid for deaths of the debtors. The record before us bears no such proof, but even if it did, it would appear that the correction of the disparity should be made by the Board of Insurance Commissioners. Courts do not fix insurance premium rates. Moreover, the borrower was himself an insurance agent, and the jury found that he was accorded, but declined the privilege of saving the commission by obtaining insurance with a company of his own choice. Section 4, Art. 3.53, Insurance Code. Accordingly, the note properly included items for the cash received, the inspection and recording fees,

and the insurance premium, making a total of $406.96.

Borrower executed a term note for $468, dated December 22, 1956, payable in full eighteen months after date. The $61.04 interest is the maximum ten per cent on $406.96, and if it was actually a term note due in eighteen months, that amount would include no usury. There was more to the lending and repayment than that, however. Coincident with the execution of the loan, borrower subscribed for a Class B Investment Certificate issued by Colonial. The Certificate was for the amount of $468, the exact amount of the loan, and borrower agreed, by signing the certificate subscription, to pay Colonial $26 each month beginning January 22, 1957, and continuing for eighteen months, until June 22, 1958. That was also the maturity date for the term note. As a part of the transaction also, borrower (investor) assigned the Investment Certificate, "together with all payments now or hereafter made thereon to the Colonial Finance Corporation as collateral security to secure an indebtedness incurred today by me (us) to said Corporation." The Class B Certificate, if paid up, could be exchanged for a Class A Certificate, which would bear four per cent interest. The Class B Certificate paid one and one-half per cent interest prior to conversion. Borrower made fourteen payments of $26 each for a total of $364 and then ceased making payments.

In our opinion the $61.04 added to the note as interest was usurious and borrower was not required to pay any part of the interest. Interest was computed on the $406.96 principal for a full eighteen month period. If during that period the principal was diminishing by reason of installment payments, then the interest was excessive. Schmid v. City Nat. Bank of Wichita Falls, 132 Tex. 115, 114 S.W.2d 854, 855. Lender operated on the investment certificate plan which is explained in some detail in State of Texas v. Community Finance & Thrift Corporation, Tex.Civ.App., 334 S.W.2d 559. Briefly explained, the lender evidenced the debt by a note and chattel mortgage, and

also required the borrower to buy one of its investment certificates. The certificate was in the exact amount of the debt and the borrower agreed to pay for it by eighteen monthly installments of $26 each, making a total of $468. This was a device to charge usury and was not a bona fide separate investment. By this ruse the borrower paid the lender $26 a month, and the money was credited to borrower's contract to buy the certificate instead of to the note. The borrower assigned the certificate to Colonial "together with all payments, * * * as security to secure the loan."

Lender relies upon Article 1524a–1 to validate this plan, but in our opinion the Legislative Act itself shows on its face that it is a device to thwart the Constitutional prohibition of usury. Implicit in the Act is the notion that there is no usury if the loan and the investment are construed as two distinct matters instead of one transaction. Such a test is not the only one which is applicable. Depending upon the scheme, there may be one, two or more, or tie-in transactions. Curnutte v. Houston, Tex.Civ.App., 163 S.W.2d 675. "It is quite immaterial, in which manner or form, or under what pretense it is cloaked, if the intention was, to reserve a greater rate of interest than the law allows for the use of money, it will vitiate the contract with the taint of usury." Mitchell v. Napier, 22 Tex. 120.

■ The Legislature, as well as contracting parties, is limited by the constitutional prohibition of usury. Even the Legislature can not avoid the Constitution. Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022; Cramer v. Sheppard, 140 Tex. 271, 167 S.W.2d 147; Morrow v. Corbin, 122 Tex. 533, 62 S.W.2d 641; State ex rel. Moody, Attorney General v. Hatcher, 115 Tex. 332, 281 S.W. 192; Dickison v. Woodmen of the World Life Ins. Society, Tex. Civ.App., 280 S.W.2d 315.

The plan adopted by lender is copied from that provided by the Act. The caption, the body, and the emergency clause of Article 1524a–1 demonstrate exactly what is sought

to be accomplished by the investment certificate plan. The caption declares that it is "An Act relating to consumer financing and fixing the charges that may be made in connection therewith; * * *." Acts 1951, 52nd Leg. p. 832, ch. 472. The body of the Act authorizes corporations:

"(a) To lend money and to deduct interest therefor in advance at a rate not to exceed ten (10%) per cent per annum, and in addition to require and receive uniform weekly or monthly installments on its certificates of indebtedness purchased by the borrower simultaneously with the loan transaction, or otherwise, and as a condition to said loan, and pledged with the lender as security for said loan;

"(b) To issue and sell certificates of investment, either fully paid or on the installment plan;

"(c) The making of said loan and the sale of said investment certificate, though done at the same time and as a condition to the granting of the loan, shall nevertheless be considered as two separate and distinct transactions. The periodic payments required on the installment investment certificates, hypothecated as security for the loan, shall not be considered as a periodic repayment of the loan; and payments, when, as, and if received, shall be applied as a credit to the installment investment certificate and shall not be applied as a credit upon the loan; * * *."

The emergency clause is self-condemning, and frankly admits that the purpose is that of money lending and not otherwise. "The fact that there exists no prescribed charges for the making of loans such as those defined herein, and borrowers have been and are being grievously exploited by lenders whose charges are exorbitant, creates an emergency * * *." In other words, the declared purpose of the Act and of the plan set in operation under that Act is to authorize the collection of ten per cent interest

for a fixed term on the original amount borrowed, though the principal is paid back by installments during that term. This is an illegal authorization of usurious interest.

To sum up, the borrower received and was properly charged with cash received, $349.07; inspection fee, $8; recording fee, $0.75; and insurance premium, $49.14, for a total of $406.96, which he actually owed. Borrower repaid fourteen installments of $26 for a total of $364. Borrower therefore owed $42.96 principal. Clanton v. Community Finance & Thrift Corp., Tex.Civ. App., 262 S.W.2d 252. The $61.04 interest was usurious and void. Stanley v. Westrop, 16 Tex. 200.

The judgment is accordingly reformed so that Colonial Finance Corporation will recover only the unpaid principal in the sum of $42.96, and as reformed is affirmed.

## On Motions for Rehearing

Colonial Finance Corporation strongly urges that this Court's opinion is grounded upon the defense of usury which was not pleaded by Harrells, and upon points not raised in their brief. This argument overlooks the pleadings upon which the case arose. Colonial was the plaintiff. Our examination of Harrells' answer shows that they pleaded usury, and the prayer was for two things. Harrells cross-acted for double recovery, which we have held they were not entitled to, not having paid the principal, much less any illegal interest. Harrells also pleaded usury by sworn pleading and prayed that Colonial take nothing. Our decision is that the plaintiff failed to sustain its burden of proof with respect to interest, since it was usurious as pleaded.

Colonial also reasons that our opinion is pitched upon fundamental error. To the contrary, Colonial's pleadings expressly and definitely assert that it is "organized in accordance with Articles 1524a–1 * * *, and operates strictly in accordance with the statutes under which this plaintiff was organized as a corporation, and under which it is doing business, it required the defend-ants (Harrells) to pay the interest at the time that said contract was entered into and said interest was credited on said contract * * *." Colonial then specially pleaded that Article 1524a–1 is constitutional. In other words, plaintiff tried its whole case upon pleadings of a loan plan which depended upon the constitutionality of the Act which defendants challenged. The facts about the amount loaned were found by the jury, which our opinion accepted as the facts. The amount charged was also found by the jury or was undisputed. Colonial's motion for rehearing proceeds as though this Court had set aside certain jury findings because there was no evidence. We have set aside none of the jury findings.

Harrells' seventh point in their brief on appeal is that Article 1524a–1, upon which Colonial relies, is unconstitutional, which is the very thing this Court held. Therefore, contrary to Colonial's motion, the defendants pleaded usury, and by point on appeal urged the unconstitutionality of the very statute upon which Colonial grounded its case. Colonial's motion is overruled.

Harrells have also filed a motion for rehearing. They point out that our original opinion incorrectly stated they actually paid an $8 fee for inspecting their furniture. One part of the record shows that Harrells paid the fee for examination of title, appraisal of the property, drawing the loan instruments, taking acknowledgments and affidavits, preparation of statements, and investigation of financial responsibility.

Harrells also protest this Court's failure to search the record to determine that the evidence supported their contention that Colonial failed to prove strict compliance with the statutory rules which permitted them to charge credit insurance. The reason the Court did not discuss that point is that there is no such point. There is a point raising the general constitutionality of Sec. 6, Art. 3.53, Insurance Code, which we overruled on the basis of prior decisions. There is no point which touches the unconstitutional application of the facts to the

statute. There is a point also which asks us to render the case because, as Harrells argue, certain findings are against the overwhelming weight of the evidence. The findings are not against the overwhelming weight of the evidence. We, of course, do not render under such circumstances. Our search of the brief fails to show that Harrells, under any point, discussed the argument now made in the motion for rehearing for the first time, that Colonial did not strictly follow the statutory rules for charging for life insurance.

The motions of both parties are overruled.